LOVEJOY et al., Appellees,

v.

WESTFIELD NATIONAL INSURANCE COMPANY et al., Appellants.

[Cite as *Lovejoy v. Westfield Natl. Ins. Co.* (1996), 116 Ohio App.3d 470.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 95–B–8.

Decided Dec. 18, 1996.

*Stanley G. Burech,* for appellees.

*Thomas L. Tribbie,* for appellant.

GENE DONOFRIO, Judge.

Defendants-appellants, Westfield Insurance Company ("Westfield") and West-field National Insurance Company ("National"), appeal a judgment of the Bel-mont County Common Pleas Court sustaining the motion for summary judgment

of plaintiffs-appellees, Jason L. Lovejoy, John B. Lovejoy, and Vicki L. Lovejoy, in an action for declaratory relief, wherein judgment was rendered against each appellant in the amount of $102,500, plus prejudgment interest from the date of the injury.

Appellee Jason Lovejoy was injured in an automobile accident on May 16, 1992 while riding as a passenger in a car driven and owned by Nick Francis. Francis was an uninsured driver. The parties stipulated that, as a result of this accident, Jason and his parents, appellees John and Vicki Lovejoy, sustained injuries in excess of $410,000. The $410,000 figure equalled the maximum coverage available for losses and medical payments under two policies secured by appellees from appellants prior to the accident. Appellants, however, claimed that their total liability was only $205,000, due to antistacking language set forth in the policies. Appellants asserted that the antistacking language limited appellees' coverage to the maximum available under a single policy, despite the fact that both policies issued by appellants were in effect at the time of the accident.

On October 16, 1991, appellee, John Lovejoy, purchased from appellant National a renewal of insurance policy # WNP 7028276 ("WNP"), covering the family's two automobiles. On March 27, 1992, Lovejoy purchased from appellant Westfield a separate insurance policy, # CWP 3560270 ("CWP"), to cover a business vehicle he owned. Both policies provided uninsured motorist coverage of up to $200,000 per accident or occurrence, plus $5,000 medical payments. Both policies were in effect at the time of the accident.

The parties stipulated that National and Westfield are owned by the same parties, though they are separate corporations with separate National Association of Insurance Commissioners and federal ID numbers. The record also reveals that both policies were issued by the same account representative at M.C. Thomas Insurance Agency. On October 15, 1992, National paid appellees $102,-500 from its policy, and Westfield paid appellees $102,500 from the policy it issued, for a combined payout of $205,000 from the two policies. The conditional receipt, release, and trust agreement Westfield provided with the settlement checks referred only to the $200,000 payment under the uninsured motorist coverage, but did not refer to its inclusion of the additional $5,000.

On March 11, 1994, appellees filed an action for declaratory relief against both insurance companies, requesting a $100,000 judgment against each plus prejudgment interest from the date of the accident, to fulfill the terms of the separate insurance policies and a tort action against Nick Francis. The trial court subsequently granted appellees' motion for a default judgment against Francis, who is not a party to this appeal. A pretrial hearing was had on August 11, 1994. Appellants filed a motion for summary judgment on October 20, 1994. On November 9, 1994, appellees filed a motion in opposition to appellants' motion, as

well as its own motion for summary judgment. On December 20, 1994, the trial court filed its entry overruling appellants' motion for summary judgment and sustaining appellees' motion for summary judgment. This timely appeal follows.

Appellants assert two assignments of error in this appeal. The first assignment of error alleges:

"The trial court erred in granting summary judgment to [the] Lovejoys (plaintiffs-appellees) thereby precluding Westfield (defendants-appellants) of its contractual insurance policy language prohibiting stacking of the two applicable insurance policies when language prohibiting stacking was clear, unambiguous and conspicuous."

Appellants contend that the antistacking language set forth in the insurance policies issued to appellees satisfies the "clear, unambiguous and conspicuous" standard as applied in *Dues v. Hodge* (1988), 36 Ohio St.3d 46, 521 N.E.2d 789. Appellants assert that satisfaction of this standard was sufficient to create a genuine issue of material fact as to the effectiveness of the language, and was therefore sufficient to overcome appellees' motion for summary judgment.

The issue in the present matter is whether the language of the two policies under consideration herein satisfies the *Dues* standard. If so, the issue then becomes whether the policies are sufficiently "similar" to give effect to the liability limiting language, and whether the "excess" language of the original policy should be construed as setoff language limiting appellants' liability, or as language entitling appellees to coverage for damages in excess of the original policy's limits.

It is settled law in Ohio that R.C. 3937.18(G) allows insurance companies to provide antistacking language in insurance policies. The courts are not so settled, however, on the construction of the statute and its application to specific antistacking language. As the court noted in *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 505, 620 N.E.2d 809, 813, "[o]ur discomfort is rooted in a concern that liability insurers are collecting multiple premiums for multiple policies, while limiting recovery by antistacking language—the import of which is not known or understood by the insured consumer until tragedy strikes." Policy considerations have led Ohio courts to construe R.C. 3937.18(G) narrowly. *Id.*

The standard for granting a summary judgment motion under Civ.R. 56(C) as stated in *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274, provides:

"[B]efore summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such

evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

A reviewing court, considering an appeal from summary judgment, should look at the record in the light most favorable to the party opposing the motion. *Engel v. Corrigan* (1983), 12 Ohio App.3d 34, 12 OBR 121, 465 N.E.2d 932. In reviewing a trial court's grant of summary judgment, an appellate court applies the same standard as used by the trial court. *Varisco v. Varisco* (1993), 91 Ohio App.3d 542, 632 N.E.2d 1341, paragraph four of the syllabus. The plain language of Civ.R. 56(C) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

Insurance contracts are construed in accordance with the same rules as other written contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 597 N.E.2d 1096. Terms of the contract will be construed according to their plain, ordinary meaning, unless it leads to an absurd result. *Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, 540 N.E.2d 716.

█ In the present matter, appellee renewed the WNP policy on October 16, 1991. The annual premium for uninsured motorist coverage ("UMC") on this policy was $26. In Section V(1)(J) of the UMC provision, the policy provides:

"The limit of liability shown in the Declarations for Coverage I [$200,000 for each accident] is our maximum limit of liability for all damages resulting from any one accident * * * regardless of the number of insureds; claims made; vehicles or premiums shown in the Declarations; or vehicles involved in the accident."

In the condition section of the UMC provision, under Section V(2), "Other Insurance," the policy reads:

"If this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability available shall be the highest applicable limit of liability under any one policy, and we will only pay our share of the loss. * * * However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance."

Appellees subsequently secured the CWP policy on March 27, 1992 from the same account representative of the same insurance agency. The annual premium for UMC on this policy was $55. This policy also provides, in Section D(1) of the UMC provision, that the company will pay only the limit of the UMC ($200,000) shown in the declarations, regardless of the number of covered autos, insureds,

premiums paid, claims made, or vehicles involved in the accident. In Section E(1)(b) of the UMC provision, the policy provides:

"If this policy and any other policy providing similar insurance apply to the same 'accident,' the maximum limit of insurance under all policies shall be the highest applicable limit of insurance under any one policy."

If, as appellants contend, the policies are sufficiently similar to warrant the limiting of liability to the limits of a single policy, this court must question appellants' rationale for the significant difference in UMC premiums between the two policies. It is worth noting that the higher of the two premiums was the second policy issued. It would be reasonable that if the policies were similar, and if the intent of appellants was to restrict liability coverage, the premium on the second policy would be the lesser of the two. These policies were issued by the same account representative of the same insurance agency. It can only be concluded that the issuing agent was aware of appellees' prior coverage, and issued the UMC provision on the CWP policy for proper business purposes.

█ Antistacking language must not only be clear, conspicuous and unambiguous within the confines of an individual policy, but also within the context of a foreseeable interaction with other policies, especially where multiple policies are issued by the same agency. Based on appellants' assertions, there was no logical or rational purpose for appellees to have paid an additional premium for UMC on the CWP policy.

In reviewing antistacking language, not only must the language be clear, conspicuous, and unambiguous, but the intent and understanding of the parties must also be clear. The ordinary meaning of the language used in these policies clearly does not offer an answer as to the clear intent of both parties. Because appellants failed to set forth any justification for the collection of premiums on a policy which it now contends was a similar policy, it would be contrary to public policy interests for the court to construe the antistacking language in a manner that would serve to provide no benefit to the consumer. Therefore, it can only be concluded that the trial court properly determined that the separate UMC provisions could not be construed as similar provisions.

Appellants' first assignment of error is without merit.

Appellants' second assignment of error asserts:

"The trial court abused its discretion by granting pre-judgment interest to the insured from the date of the injury where at that time said damage could only be found to be 'unliquidated.'"

In contract actions such as this, R.C. 1343.03(A) is controlling in determining the date of prejudgment interest accrual. R.C. 1343.03(A) provides:

"In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."

■ This statute makes no reference to the words "liquidated" or "unliquidated." In *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995), 73 Ohio St.3d 110, 652 N.E.2d 687, the court stated that a determination of whether prejudgment interest is warranted should rely only upon whether the award would serve to fully compensate the aggrieved party. The award of prejudgment interest does not serve to punish the parties responsible for the underlying damages, but rather to make the aggrieved party whole. *Id.* "An award of prejudgment interest encourages prompt settlement and discourages defendants from opposing and prolonging, between injury and judgment, legitimate claims." *Royal Elec. Constr. Corp.,* at 116–117, 652 N.E.2d at 692. A determination regarding the award of prejudgment interest is within the discretion of the trial court. *Glimcher v. Reinhorn* (1991), 68 Ohio App.3d 131, 587 N.E.2d 462.

■ Although whether a claim is liquidated or not is no longer controlling in determining an award of prejudgment interest, it is an important factor to be considered in determining when payment is due and payable. Where an amount due under contract is disputed, and where the ascertainment of the amount owed is left to the trier of fact, an award of prejudgment interest is improper. However, mere denial of liability is insufficient to delay the running of prejudgment interest. *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.* (1993), 90 Ohio App.3d 490, 629 N.E.2d 1373.

■ The fundamental obligation of an insurance company is payment of insurance proceeds to the insured upon the happening of an event covered under the insurance policy. In the present matter, there is no dispute as to the amount potentially owed under contract, as the policy limits are clear. Upon review of the record, it is also clear that the costs of the injuries sustained by appellees could readily be ascertained as exceeding the policy limits of a single policy, thus affecting appellees' claim for coverage under the second policy.

There is no dispute that the type of event that occurred in the present matter was of the type covered under both policies. The happening of this event was a

condition precedent to the insurer's duty to pay. Once the condition precedent has been satisfied and the insurer's obligation is triggered, payment is due. The appellants' obligation in this case arose at the time of the injury. Interest accrues, pursuant to R.C. 1343.03(A), from the date payment is due. Since payment here is construed to be due at the time of the injury, appellants are responsible for prejudgment interest from that date.

The trial court did not abuse its discretion in awarding prejudgment interest from May 16, 1992, the date of the injury. The trial court's decision in this regard was consistent with the policy considerations of R.C. 1343.03(A) as set forth in *Royal Elec. Constr. Corp., supra.* Failure to pay prejudgment interest in this case would fail to compensate appellees for the lost use of their money and time in securing this ultimate judgment.

Appellants' second assignment of error is without merit.

The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

JOSEPH E. O'NEILL, P.J., and COX, J., concur.