PEYER et al.

v.

OHIO WATER SERVICE COMPANY, Appellant; McCutcheon, Appellee.

[Cite as *Peyer v. Ohio Water Serv. Co.* (1998), 130 Ohio App.3d 426.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 96CA29.

Decided Oct. 28, 1998.

*William E. Pfau III,* for appellant.

*Wm. Scott Fowler,* for appellee.

WAITE, Judge.

This appeal arises out of a trial court judgment granting summary judgment in favor of third-party defendant/appellee Thomas McCutcheon. For the following reasons, this court reverses the trial court judgment and remands the cause for proceedings consistent with this court's opinion.

On August 25, 1992, McCutcheon took his son and Joshua Peyer ("Josh"), his son's friend, to Hamilton Lake on a fishing trip. Both children were eleven years old at the time. Hamilton Lake is owned and operated by defendant/third-party plaintiff/appellant Ohio Water Service Company ("Ohio Water").

Josh had spent the previous night at the McCutcheons' home. When dropping him off for this visit, Josh's mother took him to the McCutcheon home and went in specifically to discuss the fishing trip. McCutcheon admits that Josh's mother made it a special point to check with him as to whether Josh was to go. McCutcheon checked to make sure Josh could swim. While at the lake, the parties fished near a dam. A concrete wall spans the length of the dam and is approximately one foot wide. Josh climbed the wall to cross the dam because he saw a pack of bobbers sitting on the other side by a tree. Josh retrieved the bobbers and returned to the McCutcheons. Fifteen minutes later, Josh climbed the wall again to cross the dam, lost his footing, and fell, sustaining numerous injuries, including a fractured skull, a brain contusion, and multiple facial fractures.

Recollections of the events preceding the fall and subsequent to Josh's first crossing are in conflict. McCutcheon testified that he never saw Josh cross the dam the first time, but that he had scolded Josh for playing down by the water's edge before the fall occurred. Josh testified that McCutcheon saw him cross the wall the first time and after he returned; McCutcheon warned him not to walk on the wall again because it was dangerous.

On November 22, 1994, Josh and his mother filed a complaint against Ohio Water. The complaint alleged that as owner of the lake, Ohio Water was negligent in the operation, maintenance, and supervision of the premises. The complaint further stated that Ohio Water knew or should have known that the concrete wall was attractive to children and failed to take measures to prevent entry onto the wall.

On January 27, 1995, Ohio Water answered the complaint, admitting that it owned the premises but denying negligence. Ohio Water also alleged that Josh assumed the risk and was contributorily negligent in causing his own injuries. Ohio Water's answer contained a third-party complaint against McCutcheon. The third-party complaint alleged that Josh was under the supervision and control of McCutcheon while on Ohio Water's property and that McCutcheon was negligent in supervising and controlling Josh, which caused or contributed to his injuries. On May 22, 1995, McCutcheon answered the third-party complaint denying the allegations.

On October 4, 1995, McCutcheon filed a motion for summary judgment, arguing that Ohio Water could not prove the essential elements of negligence in order to proceed to trial. McCutcheon submitted that Ohio Water could not establish that he owed a duty to Josh to prevent him from walking on the wall, as no special relationship existed between the two. McCutcheon also contended that because he did not see Josh cross the wall the first time, it was not foreseeable that Josh would walk on the wall and fall.

McCutcheon cited this court's decision in *Anglin v. Schultz* (June 21, 1995), Mahoning App. No. 93 CA 235, unreported, 1995 WL 382152, in support of his argument that he did not have a duty to check on or supervise Josh every minute. McCutcheon also asserted that even if a duty was found it would be one of ordinary care, which he exercised by warning Josh to stay away from the water's edge. McCutcheon also filed his deposition and Josh's deposition.

On November 15, 1995, Ohio Water filed a motion in opposition to the motion for summary judgment, citing case law holding that issues involved in a negligence case should rarely be taken from a jury and should not be taken away when the parties' conduct and the standard of care are to be determined. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 286, 21 O.O.3d 177, 179–180, 423 N.E.2d 467, 470. Cases finding that parents have a duty to supervise their children were also set forth. *Cashman v. Reider's Stop–N–Shop Supermarket* (1986), 29 Ohio App.3d 142, 29 OBR 158, 504 N.E.2d 487; *Darwish v. Harmon* (1992), 91 Ohio App.3d 630, 633 N.E.2d 546. Ohio Water applied Section 314A(4) of the Restatement of the Law 2d, Torts (1965), to establish that McCutcheon had a duty to protect Josh since he voluntarily undertook the custody of Josh. The case of *Erickson v. Lavielle* (S.D.1985), 368 N.W.2d 624, was also discussed and attached to show that Section 314A(4) has been used to create a duty on adults agreeing to care for the children of another.

Ohio Water analogized *Erickson* to the events preceding the fishing trip and referred to that part of McCutcheon's deposition where he testified that on the day before the fishing trip, Josh's mother had spoken to McCutcheon to ensure that McCutcheon had approved taking Josh fishing with him. Ohio Water also referred to McCutcheon's testimony where he stated that he believed that Josh's mother would expect him to watch over her son while they were fishing. The conflicting versions of facts given by McCutcheon and Josh in deposition were also referred to in order to demonstrate that if the evidence was viewed in favor of Ohio Water as nonmoving party, a genuine issue of material fact was created as to duty and foreseeability. Josh had testified that McCutcheon saw Josh walk across the wall the first time and warned him of the danger after he had returned to the original location. McCutcheon testified that he did not see Josh cross the dam the first time and only warned Josh not to go near the water's edge.

On November 22, 1995, McCutcheon filed a reply brief, reiterating that Ohio law imposes no duty upon him to protect another's child from injury. McCutcheon also repeated that if a duty was created, it was one of ordinary care, which was discharged when he warned Josh not to go near the water. On November 30, 1995, Ohio Water filed a supplemental brief in opposition to the motion for summary judgment, contending that not to find that at least a duty of ordinary care existed would be contrary to common sense, among other things.

On January 12, 1996, the trial court granted McCutcheon's motion for summary judgment. The trial court found that Ohio Water failed to come forward with evidence showing that McCutcheon breached a duty of ordinary care or failed to reasonably monitor Josh.

On February 1, 1996, Ohio Water filed its notice of appeal, raising the following issue:

"The trial court erred in granting summary judgment to third-party defendant Thomas McCutcheon."

Ohio Water asserts that the record, when viewed in its favor, contains ample evidence showing that a genuine issue of material fact exists as to the element of a duty. It maintains that the existence of a duty depends upon the foreseeability of an injury and whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 98, 543 N.E.2d 1188, 1192–1193; *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 180–181, 472 N.E.2d 707, 710 Ohio Water submits that since McCutcheon voluntarily undertook custody of eleven-year-old Josh, he was obliged to protect Josh from foreseeable injury and unreasonable danger under Section 314A(4) of the Restatement of the Law 2d, Torts. It argues that Josh's injury was foreseeable because, when viewing the evidence in the manner most favorable to the nonmoving party on summary judgment, McCutcheon had known about Josh's first trip across the wall and previously warned Josh about the danger in climbing the wall and walking across.

Ohio Water also refers to the South Dakota Supreme Court case of *Erickson v. Lavielle*, 368 N.W.2d 624, which relies on Section 314A(4) of the Restatement of Torts to hold that it is a question for a jury to decide whether two adults voluntarily assumed a duty to protect children not their own when they agreed to take the children on a boat ride without their parents.

Both parties correctly set forth the standard of review to be used by this court. In reviewing a trial court's grant of summary judgment, the appellate court reviews the evidence *de novo*, but applies the same standard used by the trial court. *Varisco v. Varisco* (1993), 91 Ohio App.3d 542, 545, 632 N.E.2d 1341, 1342–1343, citing *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123. Civ.R. 56(C) provides that before a court may grant summary judgment, it must determine:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for

summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

In considering an appeal from summary judgment, this court should look at the record in the light most favorable to the party opposing the motion. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138, 141.

The movant has the initial burden of informing the trial court of the basis for its motion and must identify the parts of the record that tend to prove that no genuine issue of material fact exists as to the essential elements of the other party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. Once this initial burden is met, the responding party has a reciprocal burden to place into evidence specific facts that demonstrate that a genuine issue exists. *Id.* This court has held that Civ.R. 56(C) requires that a court grant summary judgment, after adequate time for discovery and upon motion, against a party who fails to sufficiently show the existence of the essential elements on which that party will bear the burden of proof at trial. *Lovejoy v. Westfield Natl. Ins. Co.* (1996), 116 Ohio App.3d 470, 474, 688 N.E.2d 563, 565–566, citing *Dresher v. Burt.* To defeat a summary judgment motion, the respondent must present some evidence to raise a genuine issue of material fact. *Lovejoy,* 116 Ohio App.3d at 474, 688 N.E.2d at 565–566. This court is also mindful that " '[s]ummary judgment should be used cautiously so as not to usurp a litigant's right to trial where conflicting facts and * * * [circumstances] are present.' " *Cashman,* 29 Ohio App.3d at 145, 29 OBR at 162, 504 N.E.2d at 490–491, quoting *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 15, 13 OBR 8, 16–17, 467 N.E.2d 1378, 1386.

In his summary judgment motion, McCutcheon met his initial burden by arguing that Ohio Water could not establish the essential element of duty to prove a cause of action against him. He also referred to the factual conflict presented by him and Josh, which raises a question as to foreseeability: whether McCutcheon saw Josh on the wall the first time and warned him not to walk on it. McCutcheon attached the *Anglin* case in support of his contention that he did not have a duty to check on Josh every minute and acted in a reasonably prudent manner by warning Josh to stay off of the wall.

Since the initial burden was met, the onus then shifted to Ohio Water to demonstrate specific facts showing that a genuine issue for trial existed and to provide a sufficient showing of the essential elements of its negligence claim, including a showing that a duty existed. Ohio Water presented evidence that shows that McCutcheon voluntarily undertook custody/control of Josh, even though for a limited time and purpose. Ohio Water then raised Ohio case law

stating that there is no set formula for determining when a duty is owed. It cited Section 314A(4) of the Restatement of the Law 2d, Torts, to show that, under Ohio Water's interpretation of the facts, McCutcheon owed Josh a duty. Section 314A provides exceptions to the general rule found in Section 314 that a person is under no duty to act or protect another even when that person realizes or should realize that action is necessary to protect or aid another.

Section 314A(4) of the Restatement of the Law of Torts 2d provides:

"Special Relations Giving Rise to Duty to Aid or Protect

"One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other."

▉ Looking at this matter as a whole, we find that Ohio Water has met its reciprocal burden. The existence of a duty is an essential element in a cause of action alleging negligence. *Strother*, 67 Ohio St.2d at 285, 21 O.O.3d at 179, 423 N.E.2d at 469–470, citing *Feldman v. Howard* (1967), 10 Ohio St.2d 189, 193, 39 O.O.2d 228, 230–231, 226 N.E.2d 564, 566–567. Ohio Water correctly points out that there is no set formula for ascertaining whether a duty exists. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 269–270. While the scope and extent of a duty is a question of fact, the existence of such a duty is ordinarily a question of law. *Id.* Duty "is the court's 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' " *Id.*, quoting Prosser, Law of Torts (4 Ed.1971) 325–326. To determine if the imposition of a duty in a given set of circumstances is justified, courts look to "the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall." *Id.*, citing Prosser, *Palsgraf* Revisited (1953), 52 Mich.L.Rev. 1, 15.

▉ Ohio is lacking in case law that discusses the relationship that exists between an adult who agrees to temporarily care for the child of another. However, the Ohio Supreme Court has recognized that children are entitled to a higher degree of care than adults and that the amount of care required to discharge a duty to a child is greater than that required to discharge a similar duty owed to an adult. *Di Gildo v. Caponi* (1969), 18 Ohio St.2d 125, 127, 47 O.O.2d 282, 283, 247 N.E.2d 732, 733–734. Few Ohio courts have discussed the applicability of Section 314A(4) to nonparents of a child and none have yet applied this section to establish with certainty that a duty exists. See *Slagle v. White Castle Sys., Inc.* (1992), 79 Ohio App.3d 210, 217, 607 N.E.2d 45, 49–50 (employer did not assume custody of child employee so as to create a duty of protection under Section 314A of Restatement); *Evans v. Ohio State Univ.* (1996), 112 Ohio

App.3d 724, 680 N.E.2d 161 (university not negligent when its 4H extension organization hired adult volunteer member who had prior conviction for gross sexual imposition and sexually attacked a minor). A strong argument was made in a concurrence and dissent in *Evans* that a special relationship existed under Section 314A of the Restatement of the Law of Torts between the university's 4H organization and the minor child due to the vulnerability of children and the need to protect them. *Id.* at 754, 680 N.E.2d at 180–181 (Lazarus, J., concurring in part and dissenting in part). Judge Lazarus specifically noted that "neighbors, relatives and youth organizations can be in a special relationship with children so as to create a duty" pursuant to Section 314A. *Id.* at 755, 680 N.E.2d at 181.

 Ohio Water has established sufficient evidence so as to create a genuine issue of material fact. A jury may decide that, based on its resolution of the disputed facts, Section 314A(4) establishes a duty upon McCutcheon. Viewing the evidence in a light most favorable to Ohio Water, we note that McCutcheon testified in deposition that he voluntarily took custody of eleven-year-old Josh with permission of Josh's mother. Under Ohio law, it is unquestionable that Josh's mother has a duty to protect her child. When McCutcheon voluntarily took Josh away from his mother's control and supervision, McCutcheon took away Josh's mother's ability to protect her minor son and Josh's ability to receive his mother's protection. While an eleven-year-old child possesses some ability to care for himself, he is not yet an adult and still requires guidance and protection. A jury could decide that an eleven-year-old is dependent upon an adult when that adult takes the child out of the parents' home and away from the parents' supervision, control, and protection.

While recognizing that *Erickson v. Lavielle*, 368 N.W.2d 624, is persuasive authority only, we agree with the South Dakota Supreme Court's reasoning. In *Erickson*, four families gathered at a cabin on a lake. The children, ages nine through fourteen, attempted to take a pontoon boat out onto the lake. When parents became concerned about the children riding in the boat alone, two of the parents, Sadler and Lavielle, agreed to supervise the children and ride with them. In the boat, Sadler and Lavielle were aware that three of the children were sitting in the front of the boat and beyond its protective railing. The adults had scolded the children for horseplay on the boat. As a result of continued horseplay, one of the children in the front of the boat fell overboard, got caught in the boat's propeller and was injured.

The injured child's parents filed a complaint against Sadler and Lavielle, alleging negligence in operation and control of the boat and failure to supervise and control the children. Sadler denied in his answer that a duty was breached. After discovery, Sadler and Lavielle filed motions for summary judgment.

Sadler contended that no genuine issues of material fact existed as to whether he owed or assumed a duty to prevent injury to the child.

The trial court granted the motions for summary judgment, applying Section 314 of the Restatement of the Law of Torts to find that neither Sadler nor Lavielle owed a duty to the child even though they had warned the child about horseplay and were aware that the child was sitting outside the protective railing. The Supreme Court of South Dakota reversed the decision, finding that the trial court erred in applying Section 314 as it did. The high court found that the trial court had reversed its role in summary judgment and had looked at the evidence in the light most favorable to the moving parties (defendants) and not in the light more favorable to the parents, as it was required to do by law. *Id.*, 368 N.W.2d at 627.

The court emphasized the trial court's finding that once the injured child left on the boat and drifted away from his mother, his mother was no longer in a position to supervise or protect him. *Id* . The court also noted the trial court's finding that when Sadler and Lavielle scolded the children about horseplay, they were exercising supervision over them. *Id.* Viewing this evidence in a light most favorable to the child's parents for summary judgment purposes, the court found that the question as to whether Sadler and Lavielle voluntarily assumed a duty to the child was for the jury. The court found that a genuine issue of material fact existed as to whether Sadler and Lavielle voluntarily assumed a duty under Section 314A. *Id.*

The duty of the custodian in Section 314A(4) is described as one in which reasonable care under the circumstances must be exercised. No action need be taken until the custodian knows or has reason to know that the person is endangered, ill, or injured. Restatement of the Law 2d, Torts (1965), Section 314A, Comments ·*e* and *f.* It encompasses not only protection against unreasonable risk of harm, but also risks arising out of pure accidents or from the negligence of the party himself. *Id.*

Viewing the evidence in a light most favorable to appellant Ohio Water, appellee McCutcheon voluntarily took Josh fishing and testified that he knew Josh's mother would want him to supervise Josh. McCutcheon warned Josh after the first time Josh crossed the dam. As in *Erickson,* McCutcheon was exercising supervision of Josh at that time. He was aware that Josh's actions were dangerous and was put on notice or should have been aware that Josh could attempt to cross the dam a second time. Thus, Ohio Water has provided sufficient evidence that a genuine issue of material fact is present as to whether McCutcheon voluntarily assumed a duty to Josh.

McCutcheon cites this court's decision in *Anglin v. Schultz* (June 21, 1995), Mahoning App. No. 93 CA 235, unreported, 1995 WL 382152, as analogous to the

instant case and contends that just like the babysitter in *Anglin,* he had no duty to check on Josh every minute. Further, McCutcheon submits that as a reasonable person under the circumstances, he could not have foreseen that Josh would fall off of the wall. *Anglin* is easily distinguishable from the present case.

In *Anglin,* a babysitter was hired to watch David Springer and his sister. Eric Anglin, a thirteen-year-old neighbor, was visiting David and they were playing basketball in the driveway of David's home. The sitter checked on the boys and saw that they were playing basketball. An hour later, David and Eric pulled a small trampoline out of the garage and used it to dunk basketballs into the hoop. When Eric used the trampoline to dunk a ball, his teeth became caught in the net of the basketball hoop, causing serious injury. Eric's parents sued the babysitter, among others, claiming that her failure to supervise David led to the use of the trampoline in an inherently dangerous manner. The trial court granted summary judgment in favor of the sitter.

Appellants in *Anglin* argued that since the sitter had admitted in deposition that she should not have permitted this use of the trampoline and that this activity was unsafe, this created an issue of fact as to whether the sitter could have foreseen the likelihood of an injury. We held that the sitter in *Anglin* had no cause to foresee that the boys would use a trampoline to dunk basketballs because when she last checked on the boys, they were not using it. We additionally found that appellants failed to raise issues of material fact in their motion in opposition to the summary judgment because they merely recited and restated their causes of action. Thus, appellants failed to establish the essential elements: that the sitter had a duty to supervise Eric or that a duty was breached.

To the contrary, Ohio Water presented sufficient evidence that a genuine issue of material fact exists by referring to the deposition testimony of McCutcheon and Josh as they related to Section 314A(4) of the Restatement of the Law of Torts. Unlike *Anglin,* McCutcheon undertook to directly watch not only his own child but also Josh. In *Anglin,* it is unquestionable that the sitter did not undertake Eric's supervision. Further, foreseeability is a disputed issue here as deposition testimony contains factual conflicts over whether McCutcheon saw Josh cross the dam the first time. If he did, then a reasonably prudent person should anticipate that Josh would try to cross the wall a second time. Since genuine issues of material fact were raised by Ohio Water, the trial court erred in granting McCutcheon's motion for summary judgment.

We must emphasize that we are not here finding that a duty was specifically owed. We merely find that based on the evidence presented and the facts as alleged by both parties, enough questions were raised of both fact and proximate

cause to merit a trial. Summary judgment is improper where a question of material fact exists and the law is not completely settled as to duty.

For all of the foregoing reasons, we find that the assignment of error advanced by Ohio Water is meritorious. Accordingly, the trial court judgment is hereby reversed and this cause is remanded for proceedings according to law and consistent with this court's opinion.

*Judgment accordingly.*

GENE DONOFRIO, P.J., concurs.

COX, J., concurs in judgment only.