[Cite as *Fonderlin v. Trumbull Family Fitness*, 2023-Ohio-767.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

NICOLE G. FONDERLIN,
INDIVIDUALLY AND ON BEHALF
OF HER MINOR CHILD, J.P.,

       Plaintiff-Appellant,

- vs -

TRUMBULL FAMILY FITNESS,

       Defendant-Appellee.

CASE NO. 2022-T-0082

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2021 CV 00462

---

# O P I N I O N

Decided: March 13, 2023
Judgment: Reversed and remanded

---

*Andrew S. Pollis*, Milton and Charlotte Kramer Law Clinic Center, Case Western Reserve University School of Law, 11075 East Boulevard, Cleveland, OH 44106 (For Plaintiff-Appellant).

*Robert S. Yallech* and *Brianna M. Prislipsky*, Reminger Co., LPA, 11 Federal Plaza Central, Suite 1200, Youngstown, OH 44503 (For Defendant-Appellee).

MARY JANE TRAPP, J.

{¶1}   This case stems from an alleged incident in which the minor son of appellant, Nicole Fonderlin ("Ms. Fonderlin"), was sexually assaulted by two other children in an unsupervised locker room while in the afterschool program of appellee, Trumbull Family Fitness ("TFF").  Ms. Fonderlin, individually and on behalf of her minor son (the "minor"), appeals the judgment of the Trumbull County Court of Common Pleas that awarded summary judgment in favor of TFF.  More specifically, the trial court found

TFF was entitled to judgment as a matter of law because Ms. Fonderlin failed to establish TFF, as a business, had a duty to protect the minor child from the unforeseeable criminal acts of third parties.

{¶2} In her sole assignment of error, Ms. Fonderlin contends the trial court erred in applying a general premises liability framework to determine her negligence claim. She contends TFF voluntarily assumed a duty to supervise, and the trial court should have considered whether she raised a genuine issue of material fact as to TFF's failure to exercise ordinary care in its supervision of the children in the locker room during its afterschool program.

{¶3} After a careful review of the record and pertinent law, we find Ms. Fonderlin's assignment of error to be with merit. Ms. Fonderlin sufficiently argued that TFF voluntarily undertook a duty to supervise in rendering its services as an afterschool program to survive summary judgment. Further, a review of her evidentiary quality materials submitted on summary judgment reveals she presented genuine issues of material fact as to whether TFF failed to adequately supervise the children in the locker rooms.

{¶4} The judgment of the Trumbull County Court of Common Pleas is reversed and remanded for further proceedings consistent with this opinion.

**Substantive and Procedural History**

{¶5} In May 2021, Ms. Fonderlin filed a complaint in the Trumbull County Court of Common Pleas against TFF, bringing claims of negligence; negligent hiring, training, supervision, and retention; intentional and/or negligent infliction of emotional distress ("IIED"); consortium; as well as punitive damages.

2

{¶6} Factually, Ms. Fonderlin alleged that in 2019, her minor son, then eight-years old, participated in TFF's "Afterschool Kids Club," operating from 2:30 pm to 6:30 pm. The Afterschool Kids Club included an option to enroll the children into a swim program. Before and after swimming, the children would change in TFF's locker rooms that were reserved solely for the children. TFF did not have anyone supervising the children while they were changing. It was alleged that on one or more occasions, during the unsupervised locker room sessions, two older male children sexually abused, harassed, and assaulted her son. As a direct result, her son suffers from severe physical and emotional injuries, such as post-traumatic behaviors, traumatic flashbacks of abuse, difficulty sleeping, and educational disruption.

{¶7} TFF filed a motion for summary judgment, in which it contended it had no duty to protect Ms. Fonderlin's son from the unforeseen random acts of third parties. Attached to TFF's motion was an excerpt of the minor's deposition and an affidavit of Paulette Edington ("Ms. Edington"), the now former director of TFF. In the excerpt, the minor gave a description of the sexual assaults, and he stated that the older boys threatened him into cooperating. In her affidavit, Ms. Edington averred that she was employed as a director by TFF for 12 years; that there were never any previous allegations of any type of sexual assault; and that she never had any complaints of sexual misconduct occurring in any of TFF's locker rooms.

{¶8} Ms. Fonderlin filed a response, in which she argued TFF had a duty to supervise the children in the locker rooms and that reasonable minds could find that TFF should have foreseen sexual misconduct and assault could occur if children were left unsupervised and naked in a locker room.

3

Case No. 2022-T-0082

**{¶9}** In support, Ms. Fonderlin filed the depositions of Ms. Edington, Aunjanae Warfield ("Ms. Warfield"), a TFF staff member, herself, and her son. In addition, Ms. Fonderlin attached to her response TFF's personnel policies and practices, the TFF Kids Club 2021 handbook, which contains descriptions of TFF's rules and reminders, the USA Hockey Locker Room Policy, as well as a report from the U.S. Department of Justice, entitled "Sexual Assault of Young Children as Reported to Law Enforcement: Victim, Incident, and Offender Characteristics."

**{¶10}** In her deposition, Ms. Edington relayed her history as an employee of TFF, where she spent seven of her 14 years as the youth programs director and seven years as the director or chief executive officer ("CEO"). She noted that TFF does not have to apply for any special licenses with the state of Ohio because it is not a day care. She described the youth area, which was located upstairs and separate from the other parts of TFF's facility and included separate boys' and girls' locker rooms. Ms. Edington testified it was not acceptable to leave the children alone in a room without staff members present "because they're kids." The policy was to have a one to ten ratio of staff to children, with 20 being the maximum number of children.

**{¶11}** Ms. Edington also outlined the staff training for the children's locker rooms. The staff was instructed to stand in the doorway of each locker room so they "could hear everything that was going on." Female staff members were instructed to get a male staff member to assist them if they heard the boys acting out in the boys' locker room. The children swam towards the end of the day, and it took them approximately ten minutes to change out of their swim clothes prior to going home.

Case No. 2022-T-0082

{¶12} Ms. Edington recounted that the minor had problems with his alleged assailants, and the staff tried to keep them separated as much as possible.

{¶13} In her deposition, Ms. Warfield, a former staff member, described her training and her supervision of the locker rooms. If she was watching the boys' locker room, she would stand outside, watch, and listen. She would seek the assistance of a male staff member if the boys could not calm down. However, she could only recall TFF having one male staff member, and he was not always on shift when she needed assistance. She gave the children approximately ten minutes to change. She further noted that the children were not allowed to be in a room without a staff member or to roam freely. Ms. Warfield recalled several behavior issues between the minor and his assailants, one of whom had a problem with physical touching/hitting others.

{¶14} The minor described the sexual assaults, which occurred four or five times in August and September 2019. The assaults occurred in the locker room after swimming when no one was around except for the minor, his friend, and the two assailants. When he participated in Kids Club in the year prior, there was a male staff member who would come into the locker room and watch the boys on one or two occasions. He was reluctant to disclose the incidents to anyone because he was fearful. Ultimately, he confided in one of his older sisters.

{¶15} Ms. Fonderlin described her anger that the incidents occurred when she was "paying someone" to watch her child. Approximately three weeks into the program, she noticed she was waiting longer and longer for her son to come out of the locker room. This progressed from 20 to 35 to 45 minutes, and she decided to pull her son out of the

5

program. She also detailed the therapy and medications her son was taking because of the incidents.

## Summary Judgment is Awarded to TFF

{¶16} The trial court awarded summary judgment in favor of TFF. On Ms. Fonderlin's claim of negligence, the trial court found that TFF was under no duty to protect Ms. Fonderlin's son from unanticipated criminal activity. The trial court reviewed that under the "totality-of-the-circumstances" test, in order to impose a duty upon a business, third-party criminal acts must be foreseeable. The court relied on the fact that TFF was not aware of any similar prior incidents or allegations of sexual assault; therefore, there was no evidence that TFF knew or should have known that the two minors would sexually assault Ms. Fonderlin's son. Similarly, Ms. Fonderlin's claim of IIED also failed since there was no evidence TFF could foresee this type of criminal activity. Lastly, Ms. Fonderlin's derivative loss of consortium claim necessarily failed as a matter of law.

{¶17} Ms. Fonderlin raises one assignment of error on appeal:

{¶18} "The trial court erred in granting Defendant-Appellee Trumbull Family Fitness's motion for summary judgment."

## Summary Judgment Standard of Review

{¶19} This court reviews de novo a trial court's order granting summary judgment. *Hapgood v. Conrad*, 11th Dist. Trumbull No. 2000-T-0058, 2002-Ohio-3363, ¶ 13. A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law. *Id.*

6

Case No. 2022-T-0082

{¶20} "The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In *Dresher v. Burt*[, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996)], the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate, shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112[, 526 N.E.2d 798]." *Welch v. Ziccarelli*, 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374, ¶ 40.

### TFF's Duty

{¶21} In her sole assignment of error, Ms. Fonderlin contends the trial court erred in awarding summary judgment to TFF because it applied a general premises liability framework to determine her negligence claim. She contends that TFF voluntarily

7

undertook a duty to supervise, and the trial court should have determined if she raised a genuine issue of material fact as to whether TFF exercised ordinary care in its supervision of the children in the locker rooms.

**{¶22}** In order to recover on a negligence claim, a plaintiff must prove that (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, and (3) the breach of the duty proximately caused the plaintiff's injury. *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565, 697 N.E.2d 198 (1998).

**{¶23}** It is axiomatic that duty is an essential element of a claim for relief for negligence. *Estates of Morgan v. Fairfield Family Counseling Ctr.*, 77 Ohio St.3d 284, 293, 673 N.E.2d 1311 (1977). While the scope and extent of a duty is a question of fact, the existence of such a duty is a question of law. *See Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). A duty may be established by common law, legislative enactment, or by the particular facts and circumstances of the case. *Eisenhuth v. Moneyhon*, 161 Ohio St. 367, 119 N.E.2d 440 (1954), paragraph one of the syllabus.

**{¶24}** We agree with Ms. Fonderlin that the trial court erred as a matter of law in concluding that the duty owed was that of an ordinary business to an invitee. Ms. Fonderlin, in fact, made a general claim of negligence pursuant to 2 Restatement of the Law 2d, Torts (1965), Section 323, "Negligent Performance of Undertaking to Render Services," which states:

**{¶25}** "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

8

**{¶26}** "* * *

**{¶27}** "(b) the harm is suffered because of the other's reliance upon the undertaking."[1]

**{¶28}** As the Seventh District aptly explained in *Douglass v. Salem Community Hosp.*, 153 Ohio App.3d 350, 794 N.E.2d 107 (7th Dist.2003):

**{¶29}** "The theory of recovery under Section 323(b) is that 'when one undertakes a duty voluntarily, and another reasonably relies on that undertaking, the volunteer is required to exercise ordinary care in completing the duty.' *Kerr-Morris v. Equitable Real Estate Invest. Mgt., Inc.* (1999), 136 Ohio App.3d 331, 335, 736 N.E.2d 552. In other words, '[a] voluntary act, gratuitously undertaken, must be * * * performed with the exercise of due care under the circumstances.' *Briere v. Lathrop Co.* (1970), 22 Ohio St.2d 166, 172, * * * 258 N.E.2d 597. This theory of negligence does not require proof of a special relationship between the plaintiff and the defendant, or proof of somewhat overwhelming circumstances. This type of negligence follows the general rules for finding negligence, with the addition of one extra element of proof, that of reasonable reliance by the plaintiff on the actions of the defendant." *Id.* at ¶ 74; *see also Brink v. Giant Eagle*, 2017-Ohio-7960, 98 N.E.3d 822, ¶ 44 (11th Dist.).

**{¶30}** In addition, the Supreme Court of Ohio has consistently held that children have a special status in tort law and that duties of care owed to children are different from duties owed to adults, remarking that "'the amount of care required to discharge a duty

---

1. Section 323(b) is a general claim of negligence rather than a claim of a special relationship giving rise to a duty, such as Section 314A of the Restatement of the Law of Torts 2d, "Special Relations Giving Rise to Duty to Aid or Protect." At least one Ohio court has reversed summary judgment under Section 314A, after finding the appellant had established sufficient evidence of genuine issues of material fact as to whether an adult who temporarily cared for another's child had a special duty to protect and was negligent in doing so. *See Peyer v. Ohio Water Service Co.*, 130 Ohio App.3d 426, 720 N.E.2d 195 (7th Dist.1998).

Case No. 2022-T-0082

owed to a child of tender years is necessarily greater than that required to discharge a duty owed to an adult under the same circumstances. This is the approach long followed by this court and we see no reason to abandon it. "Children of tender years, and youthful persons generally, are entitled to a degree of care proportioned to their inability to foresee and avoid the perils that they may encounter. * * *."' *Di Gildo v. Caponi* (1969), 18 Ohio St.2d 125, 127, * * * 247 N.E.2d 732 * * *, quoting Ohio Jurisprudence 2d 512 (1959), Negligence, Section 21." *Bennett v. Stanley*, 92 Ohio St.3d 35, 39, 748 N.E.2d 41 (2001) (determining when a possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land).

{¶31} For instance, in *Brodie v. Summit Cty. Children Servs. Bd.*, 51 Ohio St.3d 112, 554 N.E.2d 1301 (1990), in determining whether the children services board and its employees negligently failed to perform the duties imposed upon them by R.C. 2151.421 (the official child abuse reporting, investigation, and disposition statute), the Supreme Court of Ohio noted the United States Supreme Court's observation that "'[i]t may well be that, by voluntarily undertaking to protect [a child] * * * against a danger it concededly played no part in creating, the State acquired a duty under state tort law to provide him with adequate protection against that danger. See Restatement (Second) of Torts § 323 (1965) (one who undertakes to render services to another may in some circumstances be held liable for doing so in a negligent fashion); see generally W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts § 56 (5th ed 1984) (discussing "special relationships" which may give rise to affirmative duties to act under the common law of tort).'" *Id.* at 115-116, quoting *DeShaney v. Winnebago Cty. Dept. of Social Servs.*, 489 U.S. 189, 201-202, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

10

Case No. 2022-T-0082

**{¶32}** Other jurisdictions have similarly upheld claims for relief for negligence where caretakers failed to adequately supervise children in their care. For instance, in *Todd v. First Baptist Church of West Point*, 993 So.2d 827 (Miss.2008), the Supreme Court of Mississippi reversed the circuit court's award of summary judgment after it found the plaintiffs introduced genuine issues of material fact as to whether a daycare worker was negligent in her duty to adequately supervise where one child was severely injured by another child and the daycare worker admitted to leaving the children unsupervised. *Id.* at ¶ 15.

**{¶33}** Similarly, in *Leger v. Stockton Unified School Dist.*, 202 Cal.App.3d 1448, 249 Cal.Rptr. 688 (1988), a California appellate court reversed the defendants' general demurrer to the plaintiff's complaint where the plaintiff-student alleged he was assaulted by a nonstudent in an unsupervised restroom of the high school. *Id.* at 1452-1453. The court found that the plaintiff had no obligation to plead prior acts of violence occurred in the restroom where his allegations sufficiently stated the harm was reasonably foreseeable in the absence of supervision or a warning. *Id.* at 1460.

**{¶34}** Likewise, in *J.H. v. Los Angeles Unified School Dist.*, 183 Cal.App.4th 123, 107 Cal.Rptr.3d 182 (2010), a California appellate court reversed the award of summary judgment to defendants because the defendant school district had a duty to use ordinary care in supervising the children in the afterschool program. The student was attacked and sexually assaulted by other students, and there were, at most, two supervisors watching the children. *Id.* at 129. The court held that the plaintiff presented evidence that she sustained injuries and that whether the defendants were negligent in their supervision in the afterschool program, whether the negligence was a proximate

11

cause of the plaintiff's injuries, and whether those injuries were an unreasonable risk of harm that was foreseeable by the defendants were questions for the trier of fact. *Id.* at 148.

{¶35} A review of Ms. Fonderlin's response to TFF's motion for summary judgment, supported by evidentiary quality material, reveals she raised genuine issues of material fact as to whether TFF assumed a duty to supervise and whether it violated this duty by failing to exercise ordinary care in its supervision of the children in the locker room. The evidence submitted on summary judgment revealed that TFF's policy was to leave no child unattended; that there was specific staff training for locker room supervision, which included leaving the children alone for no more than ten minutes; that the afterschool program was short-staffed; that the boys' locker room was unsupervised; that Ms. Fonderlin's son and his alleged assailants did not get along and the staff tried to keep them separated; and that Ms. Fonderlin's son and his two assailants were in the locker room unsupervised for much longer than ten minutes.

{¶36} Whether TFF undertook the duty to supervise and failed in that duty is a question of material fact that must survive summary judgment. As we often state, and which bears repeating, "Since summary judgment denies the party his or her 'day in court'[,] it is not to be viewed lightly as docket control or as a 'little trial.'" *Welch*, *supra*, at ¶ 40.

{¶37} Thus, there are genuine issues as to the material facts and the inferences which may be properly drawn therefrom, and TFF was not entitled to summary judgment as a matter of law.

12

Case No. 2022-T-0082

{¶38} The judgment of the Trumbull County Court of Common Pleas is reversed, and the matter is remanded for further proceedings consistent with this opinion.


MATT LYNCH, J.,

EUGENE A. LUCCI, J.,

concur.

13