**PHILLIPS, Appellee,**

**v.**

**STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, Appellant.**

[Cite as *Phillips v. State Auto. Mut. Ins. Co.* (1998), 127 Ohio App.3d 175.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 95 BA 52.

Decided April 3, 1998.

*Bordas, Bordas & Jividen, James B. Stoneking* and *Scott S. Blass,* for appellee.

*Sommer, Solovan, Liberati & Shaheen Co., L.P.A.,* and *Keith A. Sommer,* for appellant.

VUKOVICH, Judge.

This is an appeal from a July 25, 1995 judgment of the Belmont County Common Pleas Court overruling a motion for summary judgment by appellant, State Automobile Mutual Insurance Co. ("State Automobile"). The single issue is whether State Automobile is liable to Gloria J. Phillips ("appellee") pursuant to the State Automobile policy's underinsured motorist coverage after she received a $45,000 settlement of her claim from the tortfeasor's insurance carrier. For the following reasons the decision of the trial court is affirmed.

## STATEMENT OF THE FACTS

On February 23, 1991, appellee was a passenger in a car owned and operated by her husband, when it was struck by a vehicle driven by Sandra Wanat ("Wanat"). On November 13, 1992, appellee filed suit against Wanat, insured by General Accident Insurance Co. ("General Accident"), to the extent of Wanat's $50,000 liability limit for bodily injury in the General Accident policy. That case was settled for $45,000 in August 1994.

On January 11, 1994, appellee's counsel notified State Automobile that appellee was seeking underinsured motorist coverage. On August 1, 1994, counsel notified State Automobile that appellee would be settling with General Accident for $45,000. On August 1, 1994, State Automobile notified appellee that underinsured motorist coverage through its policy was denied. On August 30, 1994,

appellee received $45,000 and executed a release against Wanat and General Accident.

On September 24, 1994, one month after this settlement and three years and six months after the accident, appellee filed suit against State Automobile for $25,000, the limit of her underinsured motorist coverage. Appellee alleged damages in excess of $75,000. State Automobile filed a motion to dismiss and for summary judgment on the following bases: (1) that appellee's suit was not filed within the policy's two-year limitations period and (2) that R.C. 3937.18 prohibited recovery of underinsured motorist benefits.

As to the first issue, the trial court found the two-year limitations period as set forth in the State Automobile policy to be ambiguous and, therefore, unenforceable. As to the second issue, the trial court found *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, to be controlling and declared that the underinsurance claim "must be paid when the policyholder suffers damages that are in excess of the amount available from the tortfeasor's liability carrier."

On September 7, 1995, the court sustained appellee's motion for summary judgment, finding that State Automobile was liable for underinsured motorist coverage. State Automobile made timely appeal from that decision.

## ASSIGNMENTS OF ERROR

State Automobile raises as error the trial court's holding (1) that appellee's action against State Automobile was not barred by the two-year limitations period set forth in the policy, (2) that the State Automobile policy and R.C. 3937.18 do not prohibit recovery of underinsured motorist benefits when the tortfeasor's liability coverage is the same as or more than the underinsured motorist coverage, and (3) that the general release signed by appellee does not destroy State Automobile's subrogation rights in violation of the State Automobile policy.

The first assignment of error alleges:

■ "The trial court erred in holding that the State Auto policy does not require legal action to commence within two years of the date of the accident and plaintiff/appellee's action is not barred."

State Automobile argues that its policy's provision that "no legal action or arbitration proceeding may be brought against us unless the action or proceeding is begun within two years of the date of the accident" is clear and unambiguous. Because this suit was brought on September 12, 1994, three years and six months after the February 23, 1991 accident, State Automobile argues that this two-year limitations period has been violated.

In its judgment entry, the trial court took note of the policy's limitations period but read it in concert with another policy provision providing: "[W]e will pay under this coverage only after the limits of liability under any applicable bodily injury, liability bonds or policies have been exhausted by payment of judgments or settlements." State Automobile contends that this second provision is simply the order in which payment is to be made and should not be held to mean that appellee cannot file suit for underinsured motorist coverage unless and until the tortfeasor has paid a judgment or settlement in the matter.

State Automobile seeks support from *Colvin v. Globe Am. Cas. Co.* (1982), 69 Ohio St.2d 293, 23 O.O.3d 281, 432 N.E.2d 167, wherein the Supreme Court of Ohio found a twelve-month limitation period for bringing suit against the company to be clear, unambiguous, and reasonable. State Automobile contends that its policy is likewise clear, unambiguous, and reasonable. In contrast, State Automobile also points out that the Supreme Court of Ohio found a policy precluding the insured from commencing an action for payment of uninsured/underinsured motorist coverage unless commenced within only one year of the accident to be unreasonable and against public policy. See *Miller v. Progressive Cas. Ins. Co.* (1994), 69 Ohio St.3d 619, 635 N.E.2d 317. However, these cases deal only with interpretation of a limitations provision.

In *Heil v. United Ohio Ins. Co.* (1990), 66 Ohio App.3d 307, 584 N.E.2d 19, the court examined the interconnection between a limitations provision and an exhaustion provision. Reading the two provisions in concert, the *Heil* court found the limitations provision of the policy under consideration to be ambiguous:

"[W]hile we have no quarrel with United's interpretation of the exhaustion provision, we likewise believe it would not be unreasonable for a policy holder to conclude that he must pursue the other coverage to conclusion prior to filing his suit or arbitration demand against United.

"* * *

"In summary, we find the twelve-month action provision of United's policy is reasonably susceptible of two different interpretations, both on its face and in conjunction with the exhaustion provision of the policy." *Heil, supra,* at 312, 584 N.E.2d at 22.

██ Where insurance policy provisions are "reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 65, 543 N.E.2d 488, 490. "[A]n exclusion from liability must be clear and exact in order to be given effect." *Id.*

The exhaustion requirement is a "precondition" or "threshold requirement" that activates underinsured motorist coverage. *Bogan v. Progressive Cas. Ins.*

*Co.* (1988), 36 Ohio St.3d 22, 25 and 27, 521 N.E.2d 447, 450–451 and 452–453. Thus, both policy provisions must be read in concert. Construing the language of the State Automobile policy's two provisions at issue herein against State Automobile and in favor of appellee, the exhaustion clause makes ambiguous an otherwise clear and unambiguous limitations clause.

In this case, the trial court correctly determined that the limitations provision was clear and unambiguous when read alone but ambiguous and unenforceable when read in concert with the exhaustion provision. Appellee timely sued Wanat but was unable to conclude that suit and exhaust Wanat's liability coverage through judgment or settlement within the two-year limitations period. The reasonable interpretation of the policy language is that appellee has two years from judgment or settlement to seek underinsured motorist coverage through her State Automobile policy.

Therefore, we hold that the trial court did not abuse its discretion finding that the State Automobile policy did not require legal action on the underinsured motorist coverage to be commenced within two years of the date of the accident because appellee had not received a judgment against or settlement from General Accident. State Automobile's first assignment of error is without merit.

█ In the second assignment of error, State Automobile alleges:

"The trial court erred in holding that the State Auto policy and R.C. 3937.18 do not prohibit recovery of underinsured motorist benefits when the tortfeasor's liability coverage is the same or more than the underinsured motorist coverage."

State Automobile argues that both the State Automobile policy and the amended version of R.C. 3937.18(A)(2) prohibit recovery of underinsured motorist benefits when the tortfeasor's liability coverage is equal to or greater than the underinsured motorist coverage. State Automobile's policy had an uninsured/underinsured motorist liability limit of $25,000 per person; the tortfeasor's General Accident policy had a policy liability limit of $50,000.

The State Automobile policy Part C—UNINSURED MOTORISTS COVERAGE, at issue, reads:

"A. Paragraph A of the insuring Agreement is replaced by the following:

"We will pay damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury' caused by the accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the 'uninsured motor vehicle.' We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

"* * *

"B. Section 2 of the definition of 'Uninsured motor vehicle' is replaced by the following:

" 'Uninsured motor vehicle' means a land motor vehicle or trailer of any type:

"2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the limit of liability for this coverage.

"* * *

"C. The Limit of Liability provision is replaced by the following:

"LIMIT OF LIABILITY—The Limit of Liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident.

"* * *

"Except with respect to coverage under Section 2 of the definition of 'uninsured motor vehicle,' any amounts otherwise payable for damages under this coverage shall be reduced by all sums paid because of 'bodily injury' by or on behalf of persons or organizations who may be legally responsible, this includes all sums paid under Part A of this policy.

"With respect to coverage under Section 2 of the definition of 'uninsured motor vehicle,' the limit of liability shall be reduced by all sums paid because of 'bodily injury' by or on behalf of persons or organizations who may be legally responsible, this includes all sums paid under Part A of this policy.

"Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A of the policy."

State Automobile argues that Wanat was not an uninsured motorist under the definition of the State Automobile policy, since her General Accident policy liability limit for bodily injury was $50,000 and appellee's limit under the uninsured motorist coverage of the State Automobile policy was $25,000. State Automobile concludes that no benefits are, therefore, payable pursuant to the clear terms of the State Automobile policy as set forth above.

State Automobile also argues that R.C. 3937.18(A)(2) mandates that the policy limits of uninsured/underinsured motorist coverage be reduced by amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured. Thus, State Automobile contends that the $25,000 uninsured/underinsured motorist coverage of the State Automobile policy must be reduced by the $50,000 liability limit of the General Accident policy, leaving no underinsured motorist coverage available for appellee.

R.C. 3937.18, as amended on October 20, 1994, provided in part:

"(A)(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverage, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." Am.Sub.S.B. No. 20, 145 Ohio Laws, Part I, 210–211.

In its brief, State Automobile erroneously quotes Section 7 of S.B. No. 20 as the amended language of the statute. In reality, Section 7 of S.B. No. 20 explains the reason for the amendment to R.C. 3937.18(A)(2):

"It is the intent of the General Assembly in amending division (A)(2) of section 3937.18 of the Revised Code to supersede the effect of the holding of the Ohio Supreme Court in the October 1, 1993 decision in *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500 [620 N.E.2d 809], relative to the application of underinsured motorist coverage in those situations involving accidents where the tortfeasor's bodily injury liability limits are greater than or equal to the limits of the underinsured motorist coverage." *Id.* at 238.

Christina Savoie was killed and David Byland was injured in an automobile accident caused by Gary F. Miller, who was covered by a Grange Mutual Casualty Company automobile insurance policy with liability limits of $100,000 per person and $300,000 per accident. David Byland received $75,000 in full and final settlement of his claim against the tortfeasor.

Christina's father had underinsured motorist coverage from two policies with Motorists Mutual Insurance Company, each providing coverage to the extent of $100,000 per person and $300,000 per accident. The administrator of Christina's estate filed a wrongful death action and also filed a declaratory judgment action seeking recovery against Motorists' underinsured motorist coverage. The trial court issued findings of fact and conclusions of law. In the only aspect of the *Savoie* holding pertinent to this appeal, the trial court found that the Savoies were not permitted to collect through their underinsurance coverage because their own policy limits were identical to the limits of the tortfeasor's liability

policy. In this regard, the appellate court held that an underinsurance claim must be paid when the individual covered by an uninsured/underinsured motorist policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers. *Savoie, supra,* at paragraph three of the syllabus.

This *Savoie* holding specifically overruled *Hill v. Allstate Ins. Co.* (1990), 50 Ohio St.3d 243, 553 N.E.2d 658, holding that an underinsurance carrier avoids responsibility to its insured when the limits of its policy are identical to the limits of the tortfeasor's liability policy. In *Savoie,* the Supreme Court of Ohio determined that the *Hill* decision incorrectly construed R.C. 3937.18.

The "original motivation" behind enactment of R.C. 3937.18(A)(2) was to ensure that persons entitled to underinsured motorist coverage "receive at least the same amount of total compensation that they would have received if they had been injured by an uninsured motorist." *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 389, 18 OBR 440, 443, 481 N.E.2d 272, 275. State Automobile, herein, argues that Wanat was not an uninsured motorist under the definition of the State Automobile policy, since her General Accident policy liability limit for bodily injury was $50,000 and appellee's limit under the uninsured motorist coverage of the State Automobile policy was only $25,000. State Automobile concludes that no benefits are payable pursuant to the clear terms of State Automobile's policy as set forth above.

State Automobile further argues that R.C. 3937.18(A)(2) as amended now mandates that the policy limits of uninsured/underinsured motorist coverage be reduced by amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured. State Automobile contends that the $25,000 uninsured/underinsured motorist coverage of its policy must be reduced by the $50,000 liability limit of the General Accident policy, leaving no underinsured motorist coverage available. State Automobile reaches this conclusion by applying the amended version of R.C. 3937.18(A)(2) retroactively. State Automobile argues that the General Assembly, in amending the statute, made clear that the legislative intent was specifically to supersede *Savoie.*

Appellee's accident herein occurred February 23, 1991, and appellee filed her complaint against State Automobile on September 12, 1994. State Automobile argues that even though the statutory amendment took effect October 20, 1994, the very fact that the amendment supersedes the decision in *Savoie* makes moot any question of retroactivity.

Appellee argues that *Savoie* is controlling. Under *Savoie,* underinsured motorist coverage is deemed excess coverage over and above the tortfeasor's liability coverage:

"An underinsurance claim must be paid when an individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers." *Savoie, supra,* at paragraph three of the syllabus.

Appellee also cites *Hillman v. Hastings Mut. Ins. Co.* (1994), 68 Ohio St.3d 238, 626 N.E.2d 73, and *Newman v. United Ohio Ins. Co.* (1994), 69 Ohio St.3d 1204, 631 N.E.2d 157, to support the proposition that there is no right to setoff.

■ The crux of the issue herein is whether *Savoie* controls. Section 28, Article II, Ohio Constitution expressly provides that "[t]he general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts." R.C. 1.48 provides that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." For a statute to be applied retroactively, the retroactive intent must be express, unequivocal, and susceptible of no other reasonable interpretation. *Kelley v. State ex rel. Gellner* (1916), 94 Ohio St. 331, 337, 114 N.E. 255, 256–257. Am.Sub.S.B. No. 20, which effectuated the amendment, does not specifically provide for retroactive application, "[a]lthough the General Assembly was crystal clear in stating its desire to supersede Savoie." *Cole v. Holland* (1996), 76 Ohio St.3d 220, 224, 667 N.E.2d 353, 356; see, also, *Nease v. Med. College Hosp.* (1992), 64 Ohio St.3d 396, 398, 596 N.E.2d 432, 434; *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 106, 522 N.E.2d 489, 495–496. Consequently, causes of action arising prior to October 20, 1994, are controlled by paragraph three of the *Savoie* syllabus and by former R.C. 3937.18. *Cole, supra,* at 224, 667 N.E.2d at 356.

Furthermore, to the extent that Am.Sub.S.B. No. 20 would retroactively deprive an insured of underinsured motorist coverage pursuant to R.C. 3937.18(A)(2), and as interpreted in *Savoie,* it would be void and of no effect.

■ The general rule that "a decision of a court of supreme jurisdiction overruling a former decision is retrospective in operation, and the effect is not that the former law was bad law, but that it was never the law." *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 129 N.E.2d 467, 468. In *Cartwright v. The Maryland Ins. Group* (1995), 101 Ohio App.3d 439, 655 N.E.2d 827, the court explained:

"Pursuant to Section 32, Article II of the Ohio Constitution, the General Assembly is 'expressly prohibited from exercising any judicial power which is not expressly conferred by the constitution.' *Bartlett v. State* (1905), 73 Ohio St. 54, 58 [75 N.E. 939, 940–941]. Thus, while the General Assembly may, in appropriate circumstances, supersede the prospective application of a Supreme Court decision through its general power to make legislative changes, it may not exercise judicial power and specifically 'annul, reverse or modify' a holding of the

Supreme Court already rendered. *Id.* We believe this fundamental separation-of-powers limitation means that the General Assembly, unlike the Supreme Court, may not declare that a specific judicial decision was never the law. Rather, if the General Assembly intends to give retroactive force to a rule of law contrary to a Supreme Court decision, it must enact general legislation containing that rule of law and expressly declare its intent that the rule of law is to be applied retroactively. In addition, the General Assembly must confine such retroactive enactments within the constitutional boundaries relative to retroactive legislation.

"* * *

"Based on the foregoing discussion, *Savoie* controls the disposition of this appeal. This court has determined that under *Savoie*, a person injured by an underinsured motorist tortfeasor is entitled to collect up to the full limit of an underinsured motorist policy to the extent that his damages exceed the amount he has already received from the tortfeasor." (Emphasis added.) *Id.* at 443–445, 655 N.E.2d at 829–830.

In *Lanza–Costlow v. State Farm Fire & Cas. Co.* (1996), 115 Ohio App.3d 106, 684 N.E.2d 742, we concluded that pending causes of action accruing prior to October 29, 1994, the effective date of Am.Sub.S.B. No. 20, are controlled by *Savoie*. Furthermore, we declared, "Procedurally, in the absence of a specific provision in a decision which declares that its application is to be prospective only, the decision shall be applied retrospectively as well." *Id.* at 110, 684 N.E.2d at 744. See *State ex rel. Bosch v. Indus. Comm.* (1982), 1 Ohio St.3d 94, 98, 1 OBR 130, 133, 438 N.E.2d 415, 418. The *Savoie* court did not indicate whether its decision was to be prospective only; therefore, it should be applied retrospectively to the facts of this case.

Given that *Savoie* controls, appellee's underinsurance claim must be paid when her damages suffered exceed those monies available to be paid by General Accident. In *Bogan, supra,* the Supreme Court of Ohio determined that a settlement for $21,000 on a policy limit of $25,000 was exhaustion or "receipt of the entire policy for all applicable purposes." *Bogan, supra,* 36 Ohio St.3d at 28, 521 N.E.2d at 453. The court nonetheless cautioned, "We do not mean to suggest * * * that an injured party may, voluntarily or otherwise, abandon his claim against the tortfeasor or his insurer and so proceed directly against the underinsured motorist insurer." *Id.*

In this vein, the Court of Appeals for Cuyahoga County in *Motorists Mut. Ins. Cos. v. Grischkan* (1993), 86 Ohio App.3d 148, 620 N.E.2d 190, found (1) that the insureds failed to exhaust the $100,000 limits of the tortfeasor's automobile policy when they accepted a $75,000 settlement with estimated litigation costs to be in excess of $10,000 and, therefore, (2) that the insureds were not entitled to

underinsured motorist coverage from their own insurance carrier. *Id.* at paragraph six of the syllabus.

In *Cole v. Holland, supra,* the Supreme Court of Ohio explained:

"[W]e note that if an injured party's damages do not exceed the amount of recovery available from the tortfeasor's liability insurers, the tortfeasor is not underinsured and underinsurance coverage does not come into play. Likewise, if the injured party's damages do exceed the amount available from the tortfeasor's liability insurers, but do not exceed the relevant policy limit of the injured party's underinsurance coverage, that injured party will recover the full extent of his or her damages, with the underinsurance provider paying those damages not covered by the tortfeasor's liability insurers. In that situation, the tortfeasor is underinsured, but the setoff issue does not come into play * * *." *Id.*, 76 Ohio St.3d at 222, 667 N.E.2d at 355.

■ Given the $5,000 difference between Wanat's policy limit and the settlement, appellee exhausted the limits of the General Accident policy. Appellee alleged damages in excess of $75,000. Thus, she is entitled to the difference between $50,000 and up to the limits of the underinsured motorist coverage provision of her own policy. If her damages did not exceed $50,0000, she would not be entitled to receive any monies under her policy's underinsured motorist provision.

The trial court did not err in holding that the State Automobile policy and R.C. 3937.18 do not prohibit recovery of underinsured motorist benefits even though Wanat's liability coverage was greater than appellee's underinsured motorist coverage. State Automobile's second assignment of error is without merit.

■ In the third assignment of error, State Automobile alleges:

"The trial court erred in ruling that the general release signed by plaintiff/appellee does not destroy the subrogation rights of defendant/appellant in violation of the State Auto policy."

State Automobile points out the following facts: (1) on August 1, 1994, appellee's attorney gave notice to State Automobile that appellee would be accepting the $45,000 offer from General Accident; (2) on August 1, 1994, State Automobile informed appellee's attorney it had denied underinsured motorist coverage; (3) on August 30, 1994, appellee signed a release provided by General Accident.

State Automobile argues that the State Automobile policy provides for State Automobile's subrogation rights to recover damages from General Accident if there is a payment under the policy and appellee must do nothing to prejudice that right. State Automobile argues that the general release signed by appellee

releases Wanat and General Accident from all claims. Thus, State Automobile argues that appellee has no rights to subrogate to State Automobile and has destroyed the latter's right to recover damages from General Accident.

State Automobile cites the holding in *Bogan, supra,* for the proposition that appellee did not protect State Automobile's subrogation rights and, by executing the release, precluded State Automobile from exercising those subrogation rights and materially breached its contract with State Automobile. Thus, State Automobile contends that it should be discharged from an obligation to provide underinsured motorist coverage. *Bogan* was overruled on this point by *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456:

"When an insured has given his underinsurance carrier notice of a tentative settlement prior to release, and the insurer has had a reasonable opportunity to protect its subrogation rights by paying the underinsured motorist benefits before the release but does not do so, the release will not preclude recovery of underinsurance benefits. (*Bogan v. Progressive Cas. Ins. Co.* [1988], 36 Ohio St.3d 22, 521 N.E.2d 447, modified and explained.)" *Id.* at paragraph two of the syllabus.

The *McDonald* court also held:

"The insurer's failure to respond, within a reasonable time, to notification by its insured of a settlement offer will operate to void a subrogation clause in the insurer's underinsured motorist provision." *Id.* at paragraph three of the syllabus.

Once an insured notifies its underinsured motorist carrier of a settlement, the carrier can either pay the amount of settlement itself and preserve its subrogation rights or do nothing and forfeit subrogation rights. State Automobile did nothing. State Automobile should have taken the appropriate action to protect its subrogation rights; State Automobile had eight months in which to do so. Therefore, the trial court correctly found that, even though appellee accepted settlement and released Wanat, appellee may recover underinsurance benefits because her damages exceed the $50,000 liability limit of the General Accident policy. This third assignment of error is without merit.

Based on the foregoing, the decision of the trial court is affirmed.

*Judgment affirmed.*

Cox and Gene Donofrio, JJ., concur.