OPINION
This case presents an appeal by Appellant, Nationwide Insurance Company, Appellee Marianne Helal's insurer, from the Belmont County Common Pleas Court's decision to grant summary judgment to Appellee. For the following reasons, the decision of the common pleas court is hereby reversed and we herein grant summary judgment to Appellant.
On October 18, 1993, Appellee was a passenger in her boyfriend's automobile. In traveling through the town of Adena on Route 250 at an apparently excessive rate of speed, the automobile slid on gravel, rolled over into a ditch and Appellee was thrown through the closed T-top of the car sustaining fairly severe injuries. The parties agree that the medical bills incurred by Appellee within a year of the accident were fully paid by Appellee's boyfriend's insurance company. That insurance policy contained a one-year limitation period on medical payments. Thus, the boyfriend's insurance coverage ended upon the one-year anniversary of the accident. Appellee was forced to incur additional medical expenses due to two surgeries necessitated by hypertrophic scarring of the facial cuts after October 18, 1994, the one year anniversary of the accident. Appellee sought to have Appellant pay for those expenses as they were not paid by her boyfriend's insurer.
While the insurance policy which exists between Appellee and Appellant contains a "medical payments's clause, this clause states that Appellant will pay reasonable medical expenses, ". . . incurred within one year following the accident." A second section of the insurance contract entitled "Limits and Conditions of Payment, " further limits the payment of medical expenses to those which are not paid by other insurers. Under these sections, Appellant refused to pay the expenses incurred by Appellee after the one-year anniversary of the accident.
Appellee filed suit against her boyfriend to recoup these expenses in October of 1995 and filed an amended complaint to add Appellant as a named defendant in April of 1996. After filing an answer, Appellant took Appellee's deposition and filed a motion for summary judgment with the court which was opposed by Appellee. After a very brief hearing, on April 11, 1997, the trial court overruled Appellant's motion for summary judgment in an entry filed April 15, 1997. In the entry, the court impliedly grants summary judgment to Appellee when it held upon overruling Appellant's motion that the insurance contract contained a, "conflict in policy language" and that the conflict would be construed against Appellant. The court ordered Appellant's coverage under the policy to commence upon "the exhaustion of primary coverage"; that is, coverage was to commence beyond the one-year anniversary period stated in the policy. See Docket Entry of the Belmont Common Pleas Court, filed April 15, 1997. The within timely appeal was filed.
At the outset, we must state that this matter was ripe for summary judgment. It is clear from the record before us and the parties' briefs in this matter that there is no dispute over any factual matter and that this case revolves around a legal question; whether the language of the insurance policy in question contains a conflict which must be interpreted at law.
Appellant raises as its sole assignment of error the following:
 "The trial court erred when it denied Defendant/Appellant Summary Judgment, finding a conflict in the policy language and commencing the one year contractual period of limitation for medical payment coverage at the time of exhaustion of the primary insurance coverage."
In an appeal of a trial court's grant of summary judgment, an appellate court reviews the record de novo and applies the same standard used by the trial court in its determination. Sethi v.Antonucci (1998), 126 Ohio App.3d 382, citing Renner v. DerinAcquisition Corp. (1996), 111 Ohio App.3d 326. We are required to look at the record in a light most favorable to the nonmoving party. Dinsio v. Occidental Chem. Corp. (1998), 126 Ohio App.3d 292,294, citing Engel v. Corrigan (1983), 12 Ohio App.3d 34. This Court is also mindful that, "[s]ummary judgment should be used cautiously so as not to usurp a litigant's right to trial where conflicting facts and * * * [circumstances] are present. * * *" Cashman v. Reider's Stop-n-Shop Supermarket, (1986),29 Ohio App.3d 142, 145, quoting Viock v.Stowe-Woodward Co. (1983), 13 Ohio App.3d 7,15 [citations omitted].
Civ.R. 56 (C) provides that before a court may grant summary judgment, it must determine that:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. The movant has the initial burden of informing the trial court of the basis for its motion and, "* * * must be able to specifically point to some evidence of the type listed in Civ.R. 56 (C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." Vahila v. Hall
(1997), 77 Ohio St.3d 421, 429 quoting Dresher v. Burt (1996),75 Ohio St.3d 280, 293.
Once this initial burden is met, the nonmoving party has a reciprocal burden to show specific facts that demonstrate that a genuine issue for trial exists. Id. The nonmovant cannot rest on his pleadings but must produce evidence on any issue for which he bears the burden of production at trial. Wing v. Anchor Media,Ltd. of Texas (1991), 59 Ohio St.3d 108, 111. To defeat a summary judgment motion, the nonmovant must present some evidence which raises a genuine issue of material fact. Lovejoy v. WestfieldNat. Ins. Co. (1996), 116 Ohio App.3d 470, 474, citing Dresher,supra. Civ.R. 56 (C) requires that a court grant summary judgment, after adequate time for discovery and upon motion, against a party who fails to sufficiently show the existence of the essential elements on which that party will bear the burden of proof at trial. Lovejoy, 116 Ohio App.3d at 474, citingDresher, supra.
As earlier stated, all parties agree that there is no dispute involving the facts, here. Instead, the dispute revolves around the trial court's denial of summary judgment to Appellant and the apparent grant of summary judgment to Appellee. The trial court took the two pertinent sections of the Appellant and Appellee's policy of insurance and, rather than construing them together to give both sections effect, found that they were actually in conflict with one another and that they needed to be read in a light most favorable to Appellee. In so doing, the court rendered one section a complete nullity.
As pointed out by Appellant, the insurance contract contains two sections which define coverage here. The first section is appropriately entitled "Coverage Agreement." This paragraph states that payment for reasonable medical and other expenses will be made for accidental bodily injury, but provides that, "[t]he expenses must be incurred within one year following the accident . . ." The next important clause then further limits this coverage. In the "Limits and Conditions of Payment" section under "Other Insurance Clause, " the policy clearly states that the Appellant will only pay for those expenses, over and above the amount of other collectible auto Medical Payments . . . insurance . . .". These two sections are easily found in the general medical payments coverage section of the policy.
Appellant argues Fuerstenberg v. Mowell (1978) 63 Ohio App.2d 120, for the proposition that another court of appeals has upheld virtually identical language, finding it to be clear and unambiguous. Appellant is correct insofar as the Fuerstenberg court looked at language stating that medical expenses incurred within one year would be paid and upheld that one year deadline for payment of an insured's incurred expenses. The court inFuerstenberg was not, however, faced with a situation identical with that at bar. In the former matter, the insurance coverage was primary, that is, the dispute centered around when the bills were actually incurred, when payment was demanded and how the bills fit within this one year limitation. In the matter before us, we are faced with a secondary insurer providing excess coverage, that is, Appellant's coverage does not apply unless and until the primary coverage is exhausted. Therein lies the crux of the dispute: because the primary insurer here has a one year limitation on medical expense payments and so does the secondary insurer, Appellee will have no recourse from either carrier for her expenses incurred after the one-year anniversary of the accident under the medical payments coverage.
In an attempt to obtain coverage for Appellee's surgeries undergone after October 18, 1994, Appellee argues that these two medical payments clauses, that limiting said payments to a one year period following the accident and that further limiting the insurer to only excess coverage, conflict with one another. Appellee relies heavily on Heil v. United Ins. Co. (1990),66 Ohio App.3d 307. Heil involved an underinsured motorist policy. As such, it necessarily contained "excess insurance" language. The underinsured motorist policy also contained language which required the demand for said coverage must be made within one year from the accident. Needless to say, the Heil court found these sections of the underinsured coverage in conflict: an insured must first discover whether he/she is, in fact, involved with a tortfeasor who is underinsured, exhaust the tortfeasor's coverage and then apply to his/her own policy. Without question, if it takes the injured insured more than a year to pursue the tortfeasor's limits of coverage, a scenario that seems more likely than not, the demand for coverage under the uninsured motorist section would always fall outside of the one year limit. Clearly, these two sections create an inherent conflict by the very nature of an underinsured motorist policy. In Heil, the one year claim provision is more akin to a statute of limitations. The insured was required to seek coverage within the year. By the same token, the insured may not have "standing" to seek coverage within the year, because he/she will not yet know whether they are underinsured.
This Court of Appeals has recently dealt with a situation similar to Heil. In Phillips v. State Auto. Mut. Ins. Co. (1998),127 Ohio App.3d 175, we held that in an underinsured policy of insurance, where' the insurer was to pay, "only after the limits of liability under any applicable bodily injury, liability bonds or policies have been exhausted by the payments of judgments or settlements, " the only reasonable interpretation of the policy language was that the insured had two years from payment or judgment of his or her claims with the primary carrier to file for underinsured motorist coverage with his or her own insurance carrier. The difference between Heil and Phillips and the case at bar is crucial. In the underinsured motorists cases, the one and two year periods were, in effect, statutes of limitations. The injured persons in those cases were given limitations upon filing for the benefits; one year in the case of Heil, two years forPhillips. Due to the nature of underinsured motorist coverage, that an injured person is not aware he/she is underinsured until final recovery from the tortfeasor's insurance, these were seen as inherent conflicts within the policies of underinsurance.
We are not faced with the same scenario in the present case. Appellee's own medical payments portion of her insurance contract states that it will pay medical expenses incurred by her within a one year period from the date of her accident and which are not paid by, or are in excess of, another insurance carrier's payments. The one-year period in question is not a "statute of limitation" within which she had to file for these benefits or lose them forever. The one year period was, instead, a limitation on the period in which medical treatments which were sought by Appellee could be paid. Appellee sought recovery for her medical treatments from her boyfriend's insurer for the one year period following the accident. Similarly to Fuerstenberg, the boyfriend's insurer would pay expenses incurred within that year. Appellee's expenses obviously did not exceed the monetary cap set by that insurer, because the insurer paid them in full. Had her expenses exceeded the amount the, boyfriend's insurance company would pay within that year, her own medical payments clause in her own policy of insurance would operate to pay those expenses. While the language of Appellant's policy obligated it to pay any expenses Appellee incurred within that year over and above what her boyfriend's insurer would pay, it did not obligate Appellant to continue paying medical expenses into the second year. The language in the policy between Appellant and Appellee is clear, unambiguous and is not in need of any interpretation. Appellant clearly limited the coverage it would pay Appellee to an excess coverage of her expenses incurred within one year of the accident.
This policy cannot be construed identically to underinsured coverage. To underscore this fact, we need only look to Appellee's policy itself, a policy which contains a separate and distinct uninsured/underinsured motorists provision. Depending on the limits of coverage Appellee contracted and paid for in her own underinsured coverage, she may collect from Appellant her expenses beyond one year from this portion of her coverage. If we allow the trial court decision to stand, we will be nullifying the underinsured motorists provision of the parties' contract of insurance. Thus, we decline to interpret the "Medical Payments" provision of the policy in question here as though it provided coverage identical to that provided by Appellee's underinsured motorist coverage. Appellant was required by unambiguous contractual terms to pay only the excess medical expenses incurred by Appellee within one year after the accident under this provision.
For all of the foregoing, we find that Appellant's assignment of error has merit and we must reverse the decision of the trial court herein and grant summary judgment to Appellant.
Vukovich, J., Cox, P.J., concurs.
APPROVED:
 _________________________________ CHERYL L. WAITE, JUDGE