DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Lawrence County Common Pleas Court judgment in favor of Timothy Bentley, plaintiff below and appellee herein. The trial court determined that appellee was entitled to underinsured motorist coverage under an automobile liability policy issued by Progressive Insurance Company, defendant below and appellant herein.
 {¶ 2} Appellant raises the following assignment of error:
 {¶ 3} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF/APPELLEE, TIMOTHY BENTLEY AND AGAINST PROGRESSIVE INSURANCE COMPANY, PURSUANT TO PLAINTIFF BENTLEY'S CLAIM OF ENTITLEMENT TO UNDERINSURED MOTORIST COVERAGE."
 {¶ 4} The parties do not dispute the relevant facts. On May 31, 2000, appellee and his "common law wife," Margaret Monnig, were riding separate motorcycles. Julie A. Newman negligently operated her motor vehicle and collided with Monnig's motorcycle. As a result of the accident, Monnig suffered fatal injuries. Appellee also wrecked his bike and suffered physical injuries.
 {¶ 5} At the time of the accident, (1) Monnig carried an automobile liability insurance policy with appellant that provided uninsured/underinsured motorist ("UM/UIM") coverage of $12,500 per person and $25,000 per accident, and (2) the tortfeasor carried an automobile liability insurance policy with Victoria Insurance Company that provided liability limits of $12,500 per person and $25,000 per accident. The tortfeasor's insurer paid both Monnig's estate and appellee $12,500 for their injuries.
 {¶ 6} On May 4, 2001, appellee filed a complaint against appellant. Appellee's complaint sought underinsured motorist benefits under appellant's policy that it issued to Monnig. Appellee claimed that he is entitled to UIM coverage to compensate him for various emotional disorders he alleges to have suffered as a result of witnessing the accident that caused Monnig's death. In particular, appellee claimed that he suffers from "depressive disorder disease, post-traumatic stress disorder, emotional distress, bodily injury, and/or other depressive disorder diseases associated with the observations surrounding the May 31, 2000 accident."[1]
 {¶ 7} On October 17, 2001, appellant filed a motion for summary judgment. Appellant argued that appellee is not entitled to UIM coverage under its policy. Appellant asserted that appellee's injuries were not caused by an underinsured motor vehicle, as defined in its policy. Appellant further argued that appellee's claims for emotional injury did not fall within the policy definition of "bodily injury." Appellee noted that its policy defines "bodily injury" as "bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease." Appellant contended that the commonly accepted definition of "bodily injury" as used in an automobile liability insurance policy excludes non-physical injuries.
 {¶ 8} In response, appellee argued that he is entitled to UIM coverage under appellant's policy for his separate and distinct claim for emotional trauma. Appellee further asserted that his emotional injuries fall within the definition of "bodily injury." Appellee contended that his emotional injuries constitute a "disease," and thus, falls within the policy's definition of "bodily injury." To support his argument, appellee referred to the affidavit of Dr. Joseph M. Carver, a psychologist, in which Dr. Carver opines that "the conditions to which [appellee] has suffered can be defined as a `disease' * * *."
 {¶ 9} On February 22, 2002, the trial court denied appellant's motion for summary judgment. The trial court determined that appellee was entitled to UIM coverage under appellant's policy. The trial court noted that the tortfeasor's insurance carrier paid its liability limits to Monnig's estate and to appellee: $12,500 to Monnig's estate and $12,500 to appellee. The court nevertheless concluded that appellee was entitled to coverage under appellant's policy issued to Monnig, even though appellant's policy carried the same limits as the tortfeasor's policy: $12,500 per person and $25,000 per accident. Appellant filed a timely notice of appeal.
 {¶ 10} In its sole assignment of error, appellant argues that the trial court erred by granting summary judgment in appellee's favor. Appellant asserts that the trial court erroneously concluded that appellee was entitled to UIM coverage under its policy. Appellant claims that because its policy limits are the same as the tortfeasor's limits, appellee is not entitled to UIM coverage. Appellant further argues that its policy does not provide coverage for appellee's claims for emotional injury. Appellant notes that its policy provides coverage for "bodily injury" and contends that emotional injuries do not meet the definition of "bodily injury."
 {¶ 11} Appellee asserts that he is entitled to UIM coverage under appellant's policy "for the disease he now suffers due to witnessing the traumatic death of his wife." Appellee notes that he received the per person limit of $12,500 for his physical injuries, but contends that he is entitled to an additional $12,500 under appellant's policy for his "separate and distinct" claim of emotional trauma. Appellee further argues that "the severe emotional trauma" he suffered fits the definition of "bodily injury" as contained in appellant's policy.
 {¶ 12} In support of his argument, appellant refers to Moore v.State Auto. Mut. Ins. Co. (2000), 88 Ohio St.3d 27, 723 N.E.2d 97. InMoore, the Ohio Supreme Court held that an insurer may not "limit uninsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer." Id., syllabus. Appellee also refers to the affidavit of Dr. Joseph Carver, in which Dr. Carver opines that appellee's emotional injuries fulfill the definition of "disease" as contained in appellant's policy.[2]
 INTERPRETATION OF INSURANCE CONTRACTS {¶ 13} When interpreting an automobile liability insurance policy, courts must employ the statutory law in effect at the time of contracting or renewal.[3] Ross v. Farmers Ins. Group of Cos. (1998),82 Ohio St.3d 281, 287-88, 695 N.E.2d 732. The interpretation of an automobile liability insurance policy presents a question of law that an appellate court reviews without deference to the trial court. See, e.g.,Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995),73 Ohio St.3d 107, 108, 652 N.E.2d 684; Alexander v. Buckeye PipelineCo. (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus. In interpreting an automobile liability insurance policy, when the language used is clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning. See Cincinnati Indemn. Co. v. Martin (1999),85 Ohio St.3d 604, 607, 710 N.E.2d 677.
 {¶ 14} A clear, unambiguous underinsured motorist coverage provision is valid and enforceable as long as the provision is not "contrary to the coverage mandated by R.C. 3937.18(A)." Moore v. StateAuto. Mut. Ins. Co. (2000), 88 Ohio St.3d 27, 28-29, 723 N.E.2d 97; see, also, Schaefer v. Allstate Ins. Co. (1996), 76 Ohio St.3d 553, 555,668 N.E.2d 913 (stating that a court should not deem an insurance policy provision unenforceable unless the provision is contrary to the statute and contrary to the statute's purpose). Provisions in an automobile liability insurance policy that vary from statutory requirements are unenforceable. Ross, 82 Ohio St.3d at 287.
 {¶ 15} Moreover, when construing an underinsured motorist coverage provision in an automobile liability insurance policy, a court should remain "mindful of the basic tenet that the purpose of [underinsured] motorist coverage and its mandatory offering is `to protect persons from losses which, because of the tortfeasor's lack of [adequate] liability coverage, would otherwise go uncompensated.'" Id., 76 Ohio St.3d at 555
(quoting Martin v. Midwestern Group Ins. Co. (1994), 70 Ohio St.3d 478,480, 639 N.E.2d 438); see, also, Moore v. State Auto. Mut. Ins. Co.
(2000), 88 Ohio St.3d 27, 31, 723 N.E.2d 97.
 {¶ 16} Former R.C. 3937.18(A)(2)[4] required an insurer to offer:
 {¶ 17} "Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."
 {¶ 18} In the case at bar, appellant's policy provides that it will provide coverage to an insured person who is "entitled to recover from the owner or operator of an * * * underinsured motor vehicle because of bodily injury." Appellant's policy specifically defines what constitutes an "underinsured motor vehicle" and "bodily injury."
 {¶ 19} As we explain below, the clear, unambiguous policy provisions contained in appellant's policy preclude appellee from receiving UIM benefits. Additionally, the clear, unambiguous policy provisions are not contrary to the coverage mandated under R.C. 3937.18. Nothing in R.C. 3937.18 prohibits appellant from defining what constitutes an "underinsured motor vehicle" or "bodily injury" and nothing in appellant's definitions of an underinsured motor vehicle or bodily injury contradicts R.C. 3937.18.
 UNDERINSURED MOTOR VEHICLE {¶ 20} In the case at bar, appellant's policy expressly defines what constitutes an underinsured motor vehicle for which it is obligated to pay its insured UIM benefits.
 {¶ 21} The policy defines an "underinsured motor vehicle" as follows:
 {¶ 22} "[A] land motor vehicle to which a bodily injury liability bond or policy applies at the time of the accident, but its limit of liability for bodily injury:
 {¶ 23} "a. is less than the coverage limit for Underinsured Motorist Coverage shown on the Declarations Page; or
 {¶ 24} "b. Has been reduced by payments for bodily injury to persons injured in the accident, other than an insured person, to less than the coverage limit for [UIM] Coverage shown on the Declarations Page."
 {¶ 25} The tortfeasor's vehicle was not underinsured within the meaning of appellant's policy and, therefore, appellant possesses no obligation to provide UIM coverage to appellee. The tortfeasor's vehicle carried liability limits equal to appellant's policy. Thus, the tortfeasor's vehicle did not have a limit of liability for bodily injury that is less than the UIM coverage limit shown on appellant's policy. Additionally, the tortfeasor's liability limits were not reduced by payments for bodily injury to persons other than its insured. Because appellee did not suffer injury by reason of an underinsured motor vehicle as defined in appellant's policy, appellee is not entitled to UIM coverage under appellant's policy.
 {¶ 26} Furthermore, the provision defining what constitutes an underinsured motor vehicle is not contrary to the coverage mandated under R.C. 3937.18. The policy definition of "underinsured motor vehicle" mirrors the language of the statute that requires UIM coverage to protect an insured from losses when the insured does not receive from other liable persons or applicable policies the amount of the insured's liability limits.
 APPELLEE'S EMOTIONAL INJURIES ARE NOT COMPENSABLE UNDER APPELLANT'S POLICY {¶ 27} Additionally, because appellee's emotional injuries do not fall within the policy definition of "bodily injury," appellee is not entitled to UIM coverage under appellant's policy.
 {¶ 28} In construing bodily injury definitions in insurance policies, most courts have concluded that emotional injuries, regardless of how they are classified (i.e., as a "disease" or "sickness") do not constitute a "bodily injury." See Erie Ins. Co. v. Favor (1998),129 Ohio App.3d 644 (concluding that posttraumatic distress is not a "bodily injury" as defined in insurance policy); Bernard v. Cordle
(1996), 116 Ohio App.3d 116, 120, 687 N.E.2d 3 (concluding that husband who witnessed his wife sustain serious injuries in a motorcycle accident as he followed behind her on his motorcycle was precluded from recovering under insurance policy for emotional injuries when policy defined "bodily injury" as "physical harm, sickness or disease, including care, loss of services or resultant death"); Bowman v. Holcomb (1992),83 Ohio App.3d 216, 219, 614 N.E.2d 838 (concluding that negligent infliction of emotional distress allegedly suffered as a result of witnessing an accident not a compensable "bodily injury"); Grabits v.Jack (Dec. 20, 2001), Jefferson App. No. 00 JE 41 (stating that an emotional injury is not a "bodily injury" as defined in an insurance policy); Craig v. Grange Ins. Co. (Nov. 5, 1999), Montgomery App. No. 17675, appeal not allowed (2000), 88 Ohio St.3d 1437, 724 N.E.2d 812
(stating that "even when a policy definition includes the terms `sickness' and `disease,' emotional distress is not intended to be covered"); Hillman v. Hastings Mut. Ins. Co. (Sept. 22, 1992), Franklin App. No. 92AP-717 (concluding that the term "bodily injury" does not include mental stress, emotional discomfort or other non-physical injuries). Additionally, courts have construed the modifier "bodily" as used before "harm, sickness, or disease," to apply to all three terms and not just to "harm." See Mains v. State Auto. Mut. Ins. Co. (June 24, 1997), Franklin App. No. 96APE10-413 (stating that "bodily" modifies terms "injury," "sickness," and "disease") Reichard v. Nationwide Mut.Fire Ins. Co. (Dec. 10, 1992), Montgomery App. No. 13392 (stating that "the modifier `bodily' refers to all of the words in the definition, i.e., `harm,' `sickness,' and `disease'"). Thus, as used in an insurance policy, "bodily injury" means bodily harm, bodily sickness, or bodily disease. See Bowman, 83 Ohio App.3d at 218 (stating that as used in an insurance policy, "bodily injury" contemplates physical, not emotional, injuries).
 {¶ 29} In the case at bar, appellant's policy defines "bodily injury" as "bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease." Because the word "bodily" modifies "harm, sickness," and "disease," appellant's non-physical sickness and disease which he claims to have suffered as a result of witnessing Monnig's tragic death are not compensable under appellant's policy.
 {¶ 30} Appellee's argument that he nevertheless is entitled to UIM coverage for his "separate and distinct" claim for emotional injuries is without merit. In Stephenson v. Grange Mut. Cas. Co. (Nov. 4, 1999), Franklin App. No. 98AP-1596, appeal allowed (2000), 88 Ohio St.3d 1446, appeal dismissed as improvidently allowed (2000), 88 Ohio St.3d 1241,729 N.E.2d 1291, the court considered and rejected a similar argument. InStephenson, the insured witnessed her husband's accident and death. The insured claimed that she possessed an independent, direct claim for negligent infliction of emotional distress. The insured claimed that because her claim for negligent infliction of emotional distress is not derivative, she may recover under the UM/UIM policy provisions. The court of appeals disagreed, however, and reasoned that because R.C. 3937.18
expressly permits insurers to consolidate all claims arising out of one individual's bodily injury to the per person limit, the insurer could limit the insured's claim for her emotional injury, which arose out of her husband's bodily injury, to the per person limit.
 {¶ 31} Furthermore while appellee may possess a separate and distinct cause of action for emotional injuries, the question of whether an insured possesses a legally independent cause of action for emotional injuries is a completely separate issue from whether an insured may recover UM/UIM benefits under an insurance policy for emotional injuries. See Craig, supra.
 {¶ 32} For example, in Craig, the insurer argued that the plaintiffs' claims for negligent infliction of emotional distress were not covered under the UM/UIM policy provisions. The insurer asserted that the plaintiffs' claims for emotional distress did not fall within the definition of "bodily injury." The Craig court noted that a plaintiff may maintain a claim for negligent infliction of emotional distress when the facts demonstrate that "`a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.'" Id. (quoting Paugh v. Hanks (1983),6 Ohio St.3d 72, 451 N.E.2d 759, paragraph 3a, syllabus). The court stated, however, that the question presented was "not whether the common law elements of emotional distress have been met, but * * * instead whether the insurance company is required under the contract to pay such a claim." Thus, appellee's claim that because he possesses a valid cause of action for his emotional injuries means that he is entitled to UIM coverage under appellant's policy is without merit.
 {¶ 33} Appellee further asserts that an insurance policy which attempts to limit UIM coverage to situations when the insured suffers "bodily injury" is contrary to R.C. 3937.18 and to Moore v. State Auto.Mut. Ins. Co. (2000), 88 Ohio St.3d 27, 723 N.E.2d 97. We disagree.
 {¶ 34} In Moore, the Ohio Supreme Court held:
 {¶ 35} "R.C. 3937.18(A)(1), as amended by Am.Sub.S.B. No. 20, does not permit an insurer to limit uninsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer." Id., syllabus.
 {¶ 36} Moore essentially revived Sexton v. State Farm Mut. Ins.Co. (1982), 69 Ohio St.2d 431, 433 N.E.2d 555.[5]
 {¶ 37} Moore does not apply to the case at bar. Moore must be read in context. A review of Moore reveals that it applies in situations only when the insurer attempts to prohibit completely a non-bodily injured insured from collecting UM/UIM benefits under the insured's own policy. In the case at bar, unlike Moore, appellee did suffer bodily injury and he received compensation from the tortfeasor's insurer for his bodily injury. Appellant is not attempting to outright deny any and all coverage to appellee. Instead, appellant is attempting to deny coverage to appellee because he already received the limits of liability from the tortfeasor's insurer and because he is not entitled to receive additional compensation for his non-bodily injuries.
 {¶ 38} Even assuming appellee's emotional injuries were compensable injuries under appellant's policy, appellant's policy contains valid provisions that limit all claims arising out of one individual's bodily injury to the per person limit.
 {¶ 39} R.C. 3937.18(H) provides that any automobile liability insurance policy that includes underinsured motorist coverage may limit all claims arising out of any single individual's bodily injury to the per person limit set forth in the insurance policy. Specifically, the statute provides:
 {¶ 40} "Any automobile liability * * * policy of insurance that includes [underinsured motorist coverage] * * * and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may * * * include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident."
 {¶ 41} R.C. 3937.44 similarly permits automobile liability insurers to limit all claims arising out of any single individual's bodily injury to the per person limit set forth in the insurance policy. The statute provides:
 {¶ 42} "Any * * * automobile liability or motor vehicle [insurance policy] that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one accident, may * * * include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident."
 {¶ 43} "The clear import of the foregoing provisions, as applied to underinsured motorist coverage, is to permit automobile insurers to limit all claims, including [derivative] claims, arising out of any single individual's bodily injury to the per-person limit shown in the insurance policy." Carmon v. Nationwide Mut. Ins. Co. (2001),144 Ohio App.3d 686, 692-93, 761 N.E.2d 134 (citing Clark v. Scarpelli
(2001), 91 Ohio St.3d 271, 744 N.E.2d 719 (recognizing that R.C. 3937.18(H) permits insurers to consolidate wrongful death claims, even though each wrongful death claimant has a "separate and distinct" claim).
 {¶ 44} In the case at bar, appellant's policy provides that the limit of liability for each person:
 {¶ 45} "includes the total of all claims made for such bodily injury and all claims derived from such bodily injury, including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death."
 {¶ 46} Appellant's policy further specifies when the limits of liability will be reduced:
 {¶ 47} "The Limits of Liability * * * shall be reduced by all sums:
 {¶ 48} "1. paid because of bodily injury or property damage by or on behalf of any persons or organizations who may be legally responsible, including, but not limited to, all sums paid under Part I-Liability To Others; and
 {¶ 49} "2. any other amounts available for payment for bodily injury or property damage under liability bonds and policies covering persons liable to the insured person."
 {¶ 50} Thus, pursuant to appellant's policy, even if appellee's emotional injuries were compensable as "bodily injuries," appellant's policy would validly limit the amount to the per person limit, less any amounts received under other applicable policies. Appellee's claim for emotional injuries are derived from Monnig's bodily injury. Monnig's estate received $12,500 from the tortfeasor's insurer for Monnig's injuries. Appellant's policy provides a per person limit of $12,500 and further provides for a setoff of amounts received from the tortfeasor's insurer. Because Monnig's estate received $12,500 from the tortfeasor's insurer for her injuries, appellant would be entitled to setoff the $12,500 received from the tortfeasor's insurer against its limit of liability. Appellant's limit of liability is $12,500. Therefore, once appellant sets off the $12,500 paid to Monnig's estate for injuries, the per person limit under appellant's policy is exhausted, leaving nothing to compensate appellee for his derivative, emotional injuries.
 {¶ 51} Our decision also comports with the propositions that underinsured motorist coverage is not excess insurance and that a person injured by an underinsured motorist should not be afforded greater protection than that which would be available had the tortfeasor been uninsured. As both the Ohio Supreme Court and the legislature have stated, "underinsured motorist coverage * * * was not intended to be `excess insurance' to the tortfeasor's applicable liability insurance."Clark, 91 Ohio St.3d at 276; R.C. 3937.18(A). R.C. 3937.18 specifically provides that a person injured by an underinsured motorist should not be afforded greater protection than that which would be available had the tortfeasor been uninsured. See Littrell, 91 Ohio St.3d at 430; Clark,91 Ohio St.3d at 276.
 {¶ 52} If an uninsured motorist had injured appellee (and assuming that appellee would be an insured under appellant's policy had he been injured by an uninsured motorist), the most that appellee could have received for bodily and emotional injuries would be the per person limits, $12,500. Appellee received $12,500 for his injuries. Anything over and above $12,500 would be excess insurance, which, as the statute clearly states, is not the purpose of either uninsured or underinsured motorist coverage.
 {¶ 53} Accordingly, based upon the foregoing reasons, we sustain appellant's sole assignment of error and reverse the trial court's judgment.
JUDGMENT REVERSED.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and that appellant recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. Evans, J.: Concur in Judgment Opinion
[1] On June 22, 2001, appellee filed an amended complaint including Grange Insurance as a defendant and Daniel Monnig, Margaret Monnig's son, as a plaintiff. The amended complaint sought UIM coverage under the Grange policy for Daniel's loss of consortium. On October 29, 2001, appellee voluntarily dismissed Grange.
[2] We initially note that our review of the record reveals that appellee did not file a motion for summary judgment. Moreover, it does not appear that the trial court entered summary judgment in appellee's favor. Instead, the trial court denied appellant's motion for summary judgment. After denying appellant's summary judgment motion, the trial court entered judgment in appellee's favor. We will therefore construe appellant's assignment of error as asserting that the trial court's judgment awarding appellee UIM coverage under appellant's policy is contrary to law. See, generally, Erie Ins. Co. v. Kaltenbach (1998),130 Ohio App.3d 542, 546, 720 N.E.2d 597; Morrison v. Alexander (Aug. 16, 2002), Adams App. No. 2002-Ohio-4346 (recognizing that a reviewing court may reverse a trial court's judgment if the judgment is contrary to law).
[3] In the case at bar, the parties do not dispute that R.C. 3937.18 as enacted by Senate Bill 20 applies to the appellant's policy. We note that the statute as enacted by H.B. 261 may be the proper statute. In either case, the substance of the statutory provisions referred to in this opinion does not significantly differ and under either version of the statute, our decision would remain the same.
[4] On October 31, 2001, the Ohio General Assembly enacted S.B. 97, which significantly changed UM/UIM coverage in Ohio. Pursuant to the recently amended version of R.C. 3937.18, automobile liability insurers are no longer required to offer UM/UIM coverage. The General Assembly's intent in enacting S.B. 97 and in significantly changing the UM/UIM statutory provisions was to supersede a long line of Ohio Supreme Court cases. See 2001 S.B. 97, Section 3.
[5] In Sexton, the court stated that an insurer could not require its insured to suffer bodily injury in order to be entitled to uninsured motorist coverage.